SUCCESSION OF ALEXANDER MILNE—CHARLES GORDON, DUKE OF RICHMOND AND LENNOX, and another, Appellants.

A judgment ordering a certain sum belonging to a succession, in the hands of the executors, to be appropriated in a particular way, is not binding on a legatee not a party to the proceeding.

The bequest of a sum of money for a specified purpose, is a particular legacy. Such legacies are a charge upon the whole estate, and become the personal debt of the heir, and must be discharged in preference to all others, as if debts of the estate, though they exhaust the whole succession, or all that remains after the payment of the debts, and the contribution for the legitimate portions where there are forced heirs. C. C. 1627, 1661.

Universal legatees are bound, personally, not 'only for the debts and charges of the succession, but to discharge all the legacies, unless in case of reduction (C. C. 1603); and where they wish to take the seisin of the succession from the testamentary executor, they must offer him a sum sufficient to pay the moveable legacies. C. C. 1664.

APPEAL from the Court of Probates of New Orleans, *Bermudez*, J.

SIMON, J.  This case comes up on a rule taken by the appellants on the dative testamentary executor of the last will and testament of Alexander Milne, deceased, to show cause why he should not pay over to them the amount of money now in his hands belonging to the succession, or a sufficient sum to pay and satisfy the unliquidated balance of the judgment rendered by this court in March, 1841, in favor of the appellants, to wit, the sum of thirty-eight thousand dollars or thereabout.  The several Orphan Asylums, the universal legatees of the deceased, were also notified to show cause, on the same day, in relation to the premises.

The defendants answered separately, to wit :  the Milne Asylum for Destitute Orphan Girls, averred that they could make no objection to the rule taken against them by the appellants, reserving their rights upon the estate of their testator for the amount allowed them by the judgment of the Probate Court.  The Female Orphan Society, and the Society for the Relief of Destitute Boys united in the foregoing answer.  The Milne Asylum for Destitute Orphan Boys averred, that thirty thousand dollars having been allowed and appropriated by the inferior court to satisfy a particular legacy of the testator, to wit, for the building and establishing of two Asylums at Milneburgh, as stated in the will, the money now in bank, has been appropriated, by order of the court, to that use ; and that the two Milne Asylums ought to have the preference over a foreign legatee.  They also allege that they have at least equal rights, and that the appellants have already received nearly eighty thousand dollars on account of their legacy, or of the legatees they represent.  Wherefore, they pray that the rule be dismissed, or, at least, so modified as not to interfere with the rights of the other legatees.  On these pleadings the question was tried, and the judge *a quo* being of opinion that the Milne Asylums should be first provided with the establishments necessary for their location

at Milneburgh, and that the balance due to the plaintiffs must come from other assets than the sum appropriated for the establishment of the Milne Asylums, discharged the rule. From this judgment, the plaintiffs in the rule have appealed.

The evidence shows that on the 30th of September, 1840, a judgment was rendered by the Court of Probates, ordering the sum of $30,000 to be specially appropriated by the testamentary executor for the purpose of providing the two Milne Orphan Asylums, with buildings, &c. &c., to be distributed among them in the manner which the Asylums may deem fit. The appellants, who, at that time, had not yet set up their claim against the estate as particular legatees of the deceased, were not made parties to the proceedings which are now opposed to them, and they contend that they are not bound by the judgment on which one of the defendants in the rule relies. All the papers relative to the estate of the deceased were introduced in evidence by appellants' counsel; and it was admitted that there was in bank, belonging to the estate, about $24,000, and $10,000, in good notes, in the hands of the dative testamentary executor.

It is perfectly clear that the judgment rendered by the Probate Court on the 30th of September, 1840, in the absence of the applicants, who were neither called nor represented, is not binding on them ; and that the appropriation therein ordered cannot prejudice their rights. It is as to them, *res inter alios acta.*

This proceeding being an application for the satisfaction of the judgment rendered by this court contradictorily with all the present appellees, in March, 1841, (17 La. 321, 332,) it is first proper to remark that we then considered the object of the appellants' demand as being *a particular legacy.* We said that, as such, it ought to be discharged in preference to all others, and that being a charge upon the whole estate, such a legacy became a personal debt of the heir, which he must satisfy, as any other debt due by the succession. This opinion was based on article 1627 of the Civil Code, which says : " Particular legacies must be discharged *in preference to all others,* even though they exhaust the whole succession, or all that remains after the payment of the debts, and the contributions for the legitimate portion, in case there are forced heirs ;" and on article 1661, which provides that " in default of funds

sufficient to discharge the debts and *legacies of sums of money,* the testamentary executor shall cause himself to be authorized by the court to sell the moveables and the slaves not employed on plantations, and if they are insufficient, the immoveables, to a sufficient amount *to satisfy those debts and legacies;"* and we came to the conclusion that, as a simple pecuniary bequest, the legacy under consideration must be acquitted by the executors, or by the heirs, in the same manner as if it were a debt of the estate.

A careful re-examination of the question in connection with the actual and adverse pretensions of the Milne Asylum for Destitute Orphan Boys, has brought us to the inquiry whether the legacy of a sum of money, made by the deceased to the town of Fochabers, and which was the subject of the judgment here sought to be satisfied out of the funds of the estate actually realized, should be discharged *in toto,* in preference to and before providing the necessary means for building, establishing, and furnishing the two Milne Orphan Asylums created by the will of the deceased ?

The clauses of the testament relative thereto, are as follows : " It is my positive will and intention, that an Asylum for destitute orphan boys, and another Asylum for the relief of destitute orphan girls, shall be established at Milneburg, in this parish, under the names of the Milne Asylum for Destitute Orphan Boys, and Milne Asylum for Destitute Orphan Girls, and that my executors shall cause the same to be duly incorporated, by the proper authorities of this State ; and to the said two contemplated institutions, and to the present institution of The Society for the Relief of Destitute Orphan Boys in the city of La Fayette and parish of Jefferson, in this State, and to the Poydras Female Asylum, in this city, I give and bequeath, in equal shares or interests of one-fourth to each, all my lands on the bayou St: John, and on the lake Pontchartrain, including the unsold lands of Milneburg.

" I institute *for my universal heirs and legatees,* in equal shares or portions, the said four institutions, that is to say, the two intended institutions at Milneburg, and the two Asylums aforesaid, in this city, and in the city of La Fayette, to whom *I give and bequeath the residue* of all the property and estate, moveable and immoveable, I may possess at the time of my decease, to be equally divided and apportioned among them."

Whatever liberal construction we may feel disposed to put upon the expressions made use of by the testator, and however desirous we may be that his benevolent intentions should be strictly carried into effect, there is, it seems to us, nothing in the foregoing dispositions that evinces, in any way, that the real intention of the deceased was that the expenses necessary to establish the two Asylums by him created, should be paid first, and out of the funds and moveables of his estate *in preference to any of the particular and pecuniary legacies* previously mentioned in his will. It is true that the testator expresses his wish and will that those two Asylums should be established at Milneburg, that they should bear his name, and that they should be duly incorporated; but, in our opinion, it would be going too far to say, that those institutions should be first provided with the establishments necessary for their location, in a manner contrary to the free exercise of the legal rights of the particular legatees; nay, it would be equal in effect to maintaining, that those expenses ought to be paid in preference to the debts of the succession, a proposition too absurd, in itself, to be for a moment countenanced by us.

It may be true, though it is not expressed in the will, that the two Asylums must be first established and provided with lots of ground, buildings, &c., before being considered as in existence, and that the idea of the testator was that his testamentary executors should, for that purpose, appropriate a sufficient sum of money to be taken out of the mass of his estate. It may, also, be true, that the funds so appropriated would be used for the benefit of the two Milne Asylums, over and above the universal legacy contained in the will, that is to say, that they should not be made accountable for those funds in their final settlement and partition with their co-universal legatees; but this is a matter exclusively between the residuary legatees, and is no reason why those institutions should have the preference over all the other legatees, and why the rule established by article 1627 of the Civil Code should be relaxed in their favor. The estate is considerable; the amount in dispute will not exhaust the whole means of the succession; and if it were made the duty of the executors, as is contended by the appellees, to give effect to the intention of the testator, by providing immediate pecuniary means for the location

of the two Milne Asylums, they ought to have done so out of the active mass of the estate, without prejudicing the rights of those who, under a positive and imperative provision of the law, are entitled to be paid in preference to all others. This, three of the parties have felt and acknowledged, by pleading that they could make no objection to the rule taken against them by the appellants ; and we fully concur with them in this opinion.

Furthermore, it cannot be contested that the two Milne Asylums, together with the two other institutions, are merely universal and residuary legatees. The deceased bequeathed to them the universality of his estate, and, as such, they are entitled to be put in possession of the whole succession, and are seized of right of the effects thereof, if, at the decease of the testator, there are no heirs to whom a proportion of his property is reserved by law. Civ. Code, art. 1602. If so, how can it be pretended that they are in any way to be preferred to the appellants, even for a special purpose, when the law imposes upon them the obligation, as universal legatees, and says they are bound personally, not only for the debts and charges of the succession, but also *to discharge all the legacies*, (Civ. Code, art. 1603,) and that if they wish, at any time, to take the seisin from the testamentary executor, they must offer him *a sum sufficient to pay the moveable legacies*. Civ. Code, art. 1664. There would be an inconsistency in the exercise of their legal rights, which cannot for a moment be contemplated ; and if this exception to the general rule had been the intention of the testator, he would have said so. But the terms of the testament do not permit us to give it such a construction ; and the particular legacies, being by law assimilated to the debts of the succession, we cannot hesitate to say, unless the exception clearly appears from the context of the will, that they must first be paid.

It is therefore ordered, that the judgment of the Probate Court be reversed ; that the rule taken by the appellants be made absolute ; and that the appellees pay the costs in both courts.

*Eustis*, for the appellants.

*Fourchy* and *Canon*, contra.