# WHEELING.

## HOLDEN *v.* BOGGESS.

Submitted June 13, 1882—Decided July 8, 1882.

1. The third section of chapter 65 of the Code of West Virginia of 1868 provides, that "where land is *bona fide* sold in the lifetime of a husband to satisfy a lien or incumbrance thereon created by deed, in which the wife has united, or for the purchase-money thereof, whether she has united therein or not, or created before the marriage, or otherwise paramount to the claim of the wife, she shall have no right to dower in said land. But if a surplus of the proceeds of sale remain after satisfying the said lien or incumbrance or purchase-money, she shall be entitled to dower in said surplus; and a court of equity having jurisdiction of the case may make such order, as may seem to it proper to secure her right." HELD:

I. That under this section where land conveyed to a husband is sold by a commissioner under decree of a court of equity, having jurisdiction in a suit against such husband in his lifetime to satisfy a balance of a purchase-money-lien due thereon to his vendor and the sale is confirmed, and the land conveyed to the purchaser, and there is a surplus of purchase-money arising from said sale after paying said purchase-money-lien-debt and the costs of suit including the costs of sale, which by order of the court is paid to a judgment-lien-creditor of the husband, who is a party or to the husband, the wife of such husband has a contingent dower interest to the extent and of the amount of one-third of such surplus, and if the wife survives her husband, and such contingent dower interest thereby, becomes consummate, the same in a suit in equity by her is a charge upon the said land in the hands of the purchaser or those claiming under him; and for said dower in this case the widow should have an order, as directed in the opinion of this Court filed in this cause. (p. 69.)

II. That in such suit in equity to enforce such purchase-money-lien it is not necessary or proper that the wife should be a party thereto. (p. 78.)

III. That it will be taken and considered in the widow's suit for dower, that the purchaser at the commissioner's sale made his bids and purchased the land with reference to and subject to said contingent dower-interest. (pp. 74, 77.)

IV. That the foregoing principles and rulings apply to the dower given by said 3d section to the surplus proceeds of sale remaining after satisfying any other paramount lien or incumbrance in said 3d section mentioned. (p. 75.)

Appeal from and *supersedeas* to a decree of the circuit court of the county of Harrison rendered on the 11th day of May, 1881, in a cause in said court then pending, wherein Mariah Holden was plaintiff, and David W. Boggess was defendant, allowed upon the petition of the said Holden.

Hon. A. B. Fleming, judge of the second judicial circuit, rendered the decree appealed from.

HAYMOND, JUDGE, furnishes the following statement of the case:

On the 14th day of April, 1880, the plaintiff commenced this suit in equity in the circuit court of Harrison county against the defendant, and at May rules, 1880, she filed her bill in the cause. In this bill the plaintiff alleges substantially, that on the 3d day of March, 1880, her husband, William W. Holden, late of said county, died leaving her surviving him as his widow; that while she was his lawful wife living with him and during coverture, her said husband was seized in fee of an estate of inheritance in certain real estate conveyed to him by Hezekiah W. Hoskinson and wife by deed dated March 26, 1875, at the price of one thousand five hundred dollars, one thousand dollars of which was paid; and for the residue her said husband executed his note to said Hoskinson due May 1, 1876, bearing interest. A copy of said deed is filed with the bill. She further alleges, that on the 31st day of January, 1880, John Bassel, as special commissioner in the chancery cause of *Maxwell & Isham* v. *W. W. Holden et al.*, lately pending in said court, conveyed said real estate to the defendant at the price of one thousand three hundred and twenty-five dollars, a price far below what said property would have brought, had it not been known and understood at the sale, that plaintiff would be entitled to dower therein should she survive her husband. A copy of said deed from said Bassel as special commissioner is filed with the bill as an exhibit. She also alleges, that she is not barred of her dower in said real estate, nor has she in any way relinquished the same, and that she is entitled to receive her said dower therein of the defendant. The proceedings in said cause of *Maxwell & Isham* v. *W. W. Holden et al.* are

also made a part of the bill. She alleges, that she was fifty-nine years old on the 2d day of November, 1879, and that she is entitled to receive one hundred and thirty-one dollars as her dower in said property, should it be assigned her in a gross sum in lieu of dower in kind. She prays, that dower in said real estate be assigned her together with six per centum per annum damages for the detention thereof from the institution of her suit to the time of the recovery, and for such other and further general relief, as the nature of her case requires, and as to the court may seem right.

The said deed from said Hoskinson and wife to said William W. Holden, is dated 26th of March, 1875, and was duly admitted to record in the proper clerk's office in said county, on the 27th day of March, 1875. The realty conveyed by this deed is all of a certain lot of land with its appurtenances as situate on the south side of Main street in the town of Clarksburg; and the deed describes it by metes and bounds and otherwise. The deed states, that the consideration thereof is one thousand five hundred dollars as follows, to-wit: one note executed by Washington A. Lake to said William W. Holden and by him at the date of the deed assigned to said Hoskinson for one thousand dollars dated March 22, 1875, and due and payable May 1, 1876, and bearing interest from the 1st of April, 1875; and the residue of the purchase-money is evidenced by the said Holden's note on the day of the date of the deed executed to said Hoskinson for five hundred dollars payable 1st of April, 1876, with interest from April 1, 1875. The deed on its face reserves a lien to secure the unpaid purchase-money.

The deed from special commissioner John Bassel is dated the 31st day of January, 1880. This deed states and declares that whereas by a decree of the circuit court of said county, rendered at the May term thereof for the year 1878 in the chancery cause of *Maxwell et al.* v. *Holden et al.* the party of the first part was appointed a special commissioner to sell the land in the bill and proceedings of said cause mentioned and more particularly thereinafter described. And whereas, the party of the first part, as such commissioner, in pursuance of the terms of said decree did on the 12th day of August, 1878, offer said land for sale before the front door

of the court house of said county, and the party of the second part being the highest and best bidder became the purchaser thereof at the price of one thousand three hundred and twenty-five dollars, which amount has been fully paid by the party of the second part. And whereas, by further decree in said cause, made at the November term of said court for the year 1878, said sale was confirmed, and the party of the first part appointed a special commissioner to convey said land to the party of the second part. The deed then proceeds in consideration of the premises to grant the said land to the defendant describing the same by metes and bounds and otherwise, and the granting part of the deed after describing the metes and bounds of the land continues with these words, viz: "to have and to hold all the right, title and interest of the said William W. Holden in said land to the party of the second part, his heirs and assigns forever." This deed appears to have been duly admitted to record in the proper clerk's office on the day of its date.

The defendant filed his answer to plaintiff's bill at May rules 1880, as appears. The defendant in his answer says in substance, that it is true, as alleged in the bill, that said Hoskinson on the 26th day of March, 1875, conveyed the house and lot named in the bill to William W. Holden, who was then husband of the plaintiff, at the price stated by the plaintiff, that one thousand dollars thereof was paid as alleged in the bill, and the obligation of said Holden given to said Hoskinson for five hundred dollars, to secure which a lien was retained on the land in the deed of conveyance, a copy of which is filed with plaintiff's bill; that afterwards said Maxwell & Isham having recovered a judgment at law against said William W. Holden instituted their suit in chancery in said circuit court to sell said lot of land, and said Hoskinson was made party defendant thereto and filed his answer setting up his lien aforesaid for five hundred dollars asking, that his said lien might be provided for under any decree made in the said cause; that at the May term, 1878, of said court a decree was rendered for the sale of said lot of land, and the amount due said Hoskinson, five hundred and six dollars and eight cents, was declared to be a prior lien on said land; that said lot was afterwards sold by said John

Bassel, as special commissioner, and purchased by the defendant at the price of one thousand three hundred and twenty-five dollars, which he avers was the full market-value of said property, and the allegation of the said plaintiff, that said land was worth a larger sum, is wholly untrue, as defendant purchased under the belief, that there was no contingent right of dower therein; and he now insists, that under the law the plaintiff is entitled to nothing whatever as against him; that said sale was subsequently confirmed, a deed made to him by said commissioner, and all the purchase-money therefor has been paid by him to the special commissioner, and by him to said Maxwell & Isham and said Hoskinson; that he knows nothing of the age of the plaintiff and calls for full proof thereof; and he refers to the papers and proceedings in said cause of Maxwell & Isham against said Holden &c., and prays that the same may be taken as a part of his answer.

In the case of *Maxwell et al.* v. *Holden et al.* the bill of the plaintiffs therein alleges, that on the 23d day of July, 1877, the said William W. Holden confessed a judgment before the clerk of the circuit court of Harrison county during the vacation of said court in favor of said firm of Maxwell & Isham for the sum of eight hundred dollars with interest thereon from the 23d day of July, 1877, and five dollars and twenty cents costs; that on the 24th day of July, 1877, the said judgment was duly docketed in the office of the clerk of the county court of said county; that the whole of said judgment remains unpaid; that the said Holden became and is the owner in fee by deed of conveyance from Hezekiah W. Hoskinson and wife dated March 26th, 1875, of record in the proper office of said county of a certain lot or parcel of ground in the town of Clarksburg in the said county situate, &c., and bounded as described in said deed, the price of said lot being one thousand five hundred dollars, for which said Holden assigned to said Hoskinson a note or single bill executed by Washington Lake to said Holden dated March 22d, 1875, and due May 1st, 1876, with interest from April 1st, 1875, for one thousand dollars, and for the residue said Holden executed to said Hoskinson his note or single bill for five hundred dollars dated March 26th, 1875, and due April

1st, 1876, with interest from April 1st, 1875, said Haskinson retaining a lien on the face of said deed upon said lot for said purchase-money; that there is still due upon said lot five hundred dollars with interest as aforesaid, the residue of said purchase-money having been paid to said Hoskinson; that the judgment note aforesaid constitutes a lien upon said lot; and the plaintiffs in the last named bill pray, that said William W. Holden and Hezekiah W. Hoskinson be made parties defendant thereto and also pray, that said lot of land be sold, and the proceeds of the sale thereof be applied to the payment of said unpaid purchase-money and said judgment, &c.   Hoskinson filed his answer to this bill, in which he says, that there remains unpaid to him the sum of five hundred dollars upon said unpaid purchase-money lien, upon which the interest had been paid up to the 1st day of April, 1878; and he prays, that said land be sold, and that in any decree, that may be had in the premises, his lien for said sum of five hundred dollars with interest from April 1st, 1878, may be protected.

On the 15th day of June, 1878, the cause came on to be heard in said circuit court upon the bill taken for confessed as to the defendant, W. W. Holden, upon the answer of the defendant Hoskinson and exhibits; and the court in and by its decree then rendered in said last named cause ascertained, that the plaintiffs therein had a lien upon the land in the bill and proceedings mentioned for the sum of eight hundred dollars with interest thereon from the 23d day of July, 1877, amounting at the date of the decree to eight hundred and forty-two dollars and eighty cents and five dollars and twenty cents, and that the defendant, Hoskinson, had a prior lien upon said land for the sum of five hundred dollars with interest thereon from the 1st day of April, 1878, amounting at the date of the decree to five hundred and six dollars and eight cents; and the court in and by said decree ordered, that the defendant, Holden, do pay the defendant, Hoskinson, said sum of five hundred and six dollars and eight cents with interest from the date of the decree, and to the plaintiffs, said sum of eight hundred and forty-two dollars and eighty cents with a like interest and the sum of five dollars and twenty cents costs.   The court further decreed, that unless said sums

are paid within twenty days from the rising of the court with interest as aforesaid and the plaintiffs' costs in this cause, that John Bassel, who was appointed a special commissioner for the purpose, should sell said tract of land to the highest bidder.

On the 1st day of June, 1880, in the said circuit court, the counsel for the plaintiff and defendant in the case at bar entered into the following agreement in writing, which is in these words: "Maria Holden *vs.* David W. Boggess, in chancery. The parties hereto by counsel, agree that this cause may be placed upon the docket and set for hearing and be heard at the present term of court. And it is further agreed by the parties hereto, that the plaintiff is of the age stated in the bill, and that the Lake note of one thousand dollars assigned to Hoskinson was paid to said Hoskinson before the institution of the chancery suit of *Maxwell & Isham* v. *W. W. Holden, &c.*, in this cause referred to. And it is further agreed, that John Bassel, the special commissioner referred to in said cause, had collected and paid the proceeds of the sale made by him to the several creditors provided for in said cause last referred to before the institution of this suit by the plaintiff."

It does not appear that the plaintiff in the cause at bar was a party to the said suit of *Maxwell & Isham* v. *W. W. Holden, &c.*

On the 11th day of May, 1881, the cause at bar came on to be heard upon the bill, answer of the defendant and exhibits together with the agreement in writing of counsel therein; and on consideration whereof the court in its decree says: "It appears to the court that the plaintiff is not entitled to the relief prayed for in her bill;" and the court therefore adjudged, ordered and decreed, that the plaintiff's bill be dismissed, and that she pay the defendant his costs in this cause.

From this decree the plaintiff obtained an appeal to this Court.

*A. L. Hustead* for appellant cited the following authorities: Pref. Rev. Code Va. 1849, pp. 5, 7, 8, 10; Code Va. 1849, Part II., ch. 110, § 3 and note; 4 Munf. 251; 10 W. Va. 353;

Code, ch. 65, §§ 11, 12; 49 Mo. 47; 4 W. Va. 602; Rorer Jud. Sales, 199; 15 Gratt. 107; 1 Kelly, W. Va. Stat. 500; 9 W. Va. 343.

*John Bassell* for appellee cited Code, ch. 65, § 3; 2 Rob. 398; 29 Gratt. 108; 1 Code, Va. 1849, p. 565.

HAYMOND, JUDGE, announced the opinion of the Court:

There not appearing to have been a replication filed to the answer of the defendant, and the cause not appearing to have been heard upon any replication to the answer, the answer will be assumed to be true in this opinion, so far as it is responsive to the allegations of the bill.

The question presented for decision in this case has never been decided by this Court, so far as I am aware; and is not without difficulty and complication. This question involves the interpretation and construction of the 3d section of the 65th chapter of the Code of this State in relation to dower. To arrive satisfactorily at what is the true legislative intent and meaning by the enactment of that section, it is necessary to recur to prior legislation upon the subject and the reasons therefor, so far as we can learn them. In the case of *Wilson et als.* v. *Davisson,* 2 Rob. Va. 384, the first part of the syllabus is as follows: "The vendor of land conveys the same to the vendee in *fee simple,* and receives part of the purchase money, but no security for the residue. On a bill in equity against the vendee to enforce the implied equitable lien of the vendor a decree is made for the sale of the land, and the proceeds are more than sufficient to satisfy what remains due to the vendor. The surplus is claimed by creditors of the vendee who have obtained judgments against him, and taken him in execution, from which he escaped. With the vendee's assent, a decree is made in favor of those creditors for the surplus. Afterwards, the vendee dying, a bill is filed by his widow against those in possession of the land, to-wit, one to whom the purchaser at the sale under the decree had aliened the whole, and two others to whom that one had aliened a part claiming to be endowed. *Held* by two judges (Stanard and Baldwin), that the land in the hands of the purchasers is not chargeable by the widow, and that her bill

must be dismissed; *dissentiente Allen J.*, whose opinion was, that the widow was entitled to dower in the surplus, which remained after satisfying the vendor's lien, and that the amount, to which she was entitled constituted a charge upon the land in the hands of the purchaser at the sale under the decree, and of those claiming under him."

That cause was decided in August, 1843, and if the principle held by the majority of the judges, who sat in the case, were followed in the case at bar, there would be no difficulty in affirming the decree of the court below. But by an act of the Legislature of Virginia of the 20th of February, 1846, certain distinguished lawyers of that state were appointed to revise the civil Code, &c.; and the revisers in their report to the General Assembly of Virginia of a Code reported section 3 of chapter 110 as follows: "Where land is *bona fide* sold in the lifetime of the husband, to satisfy a lien or incumbrance thereon, created by deed, in which the wife has united, or created before the marriage, or otherwise paramount to the wife, she shall have no right to be endowed in the said land, or any of its proceeds, notwithstanding a surplus of such proceeds may remain after satisfying the said lien or incumbrance." The revisers in a note to said third section and in explanation thereof say: "In *Wilson* v. *Davisson*, 2 Rob. 398, the court of appeals were of opinion, that in equity the vendor's lien for unpaid purchase-money was paramount to the wife's right of dower, although the husband had the legal seizin. But although the land was sold under the decree of a court of equity to satisfy the vendor's lien, and the surplus of the proceeds of sale applied towards judgments against the husband, all which occurred in the husband's lifetime, it was still seriously insisted, that the widow had a right to charge the lands in the hands of the purchaser to the extent of one-third of such surplus. The court below so decided; and the decree was reversed in the court of appeals only by a divided court, two judges against one. The question being thus left in doubt, we propose to settle it hereafter by this section, so as to conform to the opinion of the two judges, who composed the majority."

The Legislature, however, did not adopt said third section, as reported by the revisers, but amended it materially,

and passed it as follows: "Section 3. When land is *bona fide*, sold in the lifetime of a husband to satisfy a lien or incumbrance thereon created by deed, in which the wife has united, or created before the marriage, or otherwise paramount to the wife, she shall have no right to be endowed in the said land. But if a surplus of the proceeds of sale remain after satisfying the said lien or incumbrance, she shall be entitled to dower in said surplus, and a court of equity having jurisdiction of the case may make such order as may seem to it proper to secure her right." (Chapter 110 of the Code of 1849, p. 474, and section 3 of same chapter in the Code of Virginia of 1860.) In a note to said section 3 as contained in said Codes of Virginia of 1849 and 1860 it is said of section 3 as follows: "This section was reported by the revisers without the last clause, so as to conform the law to the opinion of the majority of the judges in *Wilson* v. *Davisson*, 2 Rob. 398. The Legislature added the last clause, which conforms to the opinion of the judge who dissented in that case."

In the case of *Robinson* v. *Shacklett*, 29 Gratt. 99, Judge Staples in delivering the opinion of the court at page 107 in speaking of the said 3d section of chapter 110 says: "It seems, that this section was reported by the revisers without the last clause so as to conform the law to the opinion of the majority of the judges in *Wilson* v. *Davisson*. The Legislature added the last clause, which conforms to the opinion of Judge Allen, who dissented in that case."

It will be observed by comparing section 3 of chapter 110, as adopted by the Legislature in the Code of 1849, with section 3 of chapter 110, as reported by the revisers, that the Legislature struck from the revisers' report these words, "*or any of its proceeds, notwithstanding a surplus of such proceeds may remain after satisfying the said lien or incumbrance,*" and added the concluding clause to said section 3 as contained in the said Code of 1849, which I have given in quoting the section in full.

In the case of *Wilson, &c.*, v. *Davisson*, 2 Rob. 384, as appears by the statement of the case in the report, the circuit court held, that the complainant was entitled to charge the property with her dower interest either by way of a yearly charge thereon of said sum of nine dollars and two cents

during her life, or by an immediate charge of the present value of said interest; at her election; and the complainant by her counsel electing to take the present value, the court thereupon decreed, that the said complainant recover against the defendants the said sum of one hundred and twenty-two dollars and thirty-nine cents with interest from the date of the report until paid and the costs of suit, and · declared the said sum with interest as aforesaid to be a charge upon the property itself. And it will be seen by reference to said case at page 402, that Judge Allen says: " The court below decided, that the widow had a right to charge the property with her dower after ascertaining, what would be the yearly value of that interest, by allowing her six per cent upon one-third of the surplus, which remained after satisfying the vendor's lien and the costs; or at her election, was entitled to a recovery of the present worth of her annuity. In holding, that she had a right to elect to take a sum in gross, I think the court erred. Those entitled in reversion should be consulted; and when, as in this case, the property is charged in the hands of the purchaser, it may be convenient to pay the annuity, whilst a claim for the present value of it might result in a sacrifice ruinous to the purchaser. The true rule, it seems to me, is laid down in *Herbert, &c.,* v. *Wren, &c.,* 7 Cranch 370, where Chief Justice Marshal said, the assent of one party cannot affect the others; that they have a right to insist, that instead of a sum in gross one-third shall be set apart, and interest thereon paid annually to the tenant in dower during life. The rule would hold a *fortiori,* where, instead of interest to be raised by setting apart a sum of money, the annuity, as in this case, was a charge on the subject."

At pp. 397, 398 Judge Allen says: "The principles involved deeply affect the rights of many and are of great practical importance in the administration of justice. Marriage settlements are comparatively rare in this State. The wife usually depends upon the provision made for her in the will of her husband or the interest secured to her in his estate by the law. Her right to dower, frequently the only resource left for her own support and the sustenance of her children, is a humane provision of the common law, and has always

been much respected. The wife during coverture has a title to dower in all lands, of which her husband was seized during the coverture. When he once becomes so seized beneficially for his own use, the title attaches, and at law it is complete. The seizure must be beneficial, and therefore the widow of a trustee would not, at least in equity, be entitled to hold her dower against the *cestui que trust*. And the seisen must have abided in the husband for some time. Therefore, when the vendor passed the title to the vendee and at the same time took a mortgage for the payment of the purchase money, the two instruments were held to be parts of the same transaction, and the seisen to be that instantaneous seisen, in which the land was merely *in transitu* and never vested beneficially in the husband. *Gilliam* v. *Moore*, 4 Leigh 30. When a mortgage is given to secure the purchase money, the bargainer sells to the bargainee, upon condition that he shall pay the purchase money at the stipulated time, and if he does not, that the bargainer shall be reseized of the land. In the case under consideration, a conveyance was made to the husband; he took beneficially, entered and was seized of the absolute fee and improved the property. He owed a portion of the purchase money; and for this the vendor's lien existed. This was an implied lien, the creature of a court of equity, not recognized at law, and therefore interposing no bar to the legal title to dower. That title attached the moment the seisen vested beneficially with the husband; and though in equity it may be subordinate to the implied lien for the purchase money, upon what principal is it to be held, that it shall be divested to any greater extent?"

Again at pages 401, 402, the judge says: "If then the wife's title to dower was a vested interest, which attached during coverture, her legal title to dower in the whole subject could not be controverted at law; and in equity, as it seems to me, it can only be treated as subordinate to the implied lien of the vendor to the extent of that lien, and no further. She was no party to the suit, by which the legal estate passed out of her husband. A court of equity could only treat her husband as a trustee for the vendor to the extent of his lien. Upon the surplus she has a legal claim, and she has done no act to divest her estate. The party purchasing

from her husband, whether directly, or indirectly through the intervention of a court of equity, and a judicial sale was bound to notice her legal interest. It was his duty to look to the application of the surplus and see, that it received such direction, as would protect him from the wife's title to dower. By his purchase he became a party to the proceeding; he might have seen that the legal title was in the husband; and if he has neglected to secure himself against a title, which to the extent of the surplus a court of equity must regard as attaching to the subject and remaining with it, *he* must suffer, and not the wife, who was not *sui juris* and could not protect herself. A contrary rule will furnish a new and convenient mode, by which in innumerable instances a wife may be barred of dower in her husband's estate. He may consent to a sale out and out of an estate of great value, for some trifling balance of purchase money and after paying the amount put the residue of the price in his pocket. Such a rule would be against the policy and humanity of the law. I think therefore, that the court was correct in holding the widow entitled to dower in the surplus, and that it constituted a charge upon the land in the hands of the purchaser and those claiming under him."

From this it is manifest, that in the said case of *Wilson et al.* v. *Davisson*, Judge Allen's opinion was, that the widow in that case was entitled to dower in the surplus, which remained after satisfying the vendor's lien and the costs, and that it constituted a charge upon the land in the hands of the purchaser and those claiming under him. In fact he so expressly and unmistakably expresses himself; and the syllabus of the case in substance so represents him. From the note of the revisers to section 3 to said chapter 110 of the Code of 1849 it is clear and in fact is generally conceded, that it was the decision of the majority of the court in the last named case, that led to the adoption of said section 3 in said Code, and that the Legislature in the adoption of that section ignored the decision of Judges Baldwin and Stanard in that case and adopted the conclusion of Judge Allen, as stated in his opinion and substantially stated in the syllabus as above recited; and this too, notwithstanding the revisers reported to the Legislature the law as held by Judges Bald-

win and Stanard. When we recur to the fact, that it expressly appears in the case of *Wilson et al.* v. *Davisson*, that the widow, the plaintiff therein, claiming dower had not been a party to the suit, in which the land, in which she claimed dower, was decreed to be sold and was sold, and to Judge Allen's conclusion in the case as stated in his opinion, as well as substantially stated in the syllabus of the case, and to the fact, that it was the decision of the court in that case, that led to the adoption by the Legislature of said section 3, and that the Legislature in its adoption ignored the decision of the majority of the court in said case, but adopted the conclusion of Judge Allen therein, can there be a doubt, that it was the intention and purpose of the Legislature in the adoption of said third section in part at least, that in such cases the widow should be entitled to dower in the surplus, which remained after satisfying the vendor's lien, and that the amount should constitute a charge upon the land in the hands of the purchaser and those claiming under him? I humbly think not. In fact the last clause of said section 3, which says: "But it a surplus of the proceeds of sale remain after satisfying the said lien or incumbrance, she shall be entitled to dower in said surplus, and a court of equity having jurisdiction of the case may make such order as may seem to it proper to secure her right," indicates that purpose and intention, and when we see the conclusion of Judge Allen in his opinion and substantially in the syllabus, with reference to which said clause was incorporated into said third section with the view of adopting Judge Allen's conclusion the meaning and purpose of the said clause, it seems to me, is in part at least clearly as I have stated it to be.

The said third section of said chapter 110 of the Code of Va. of 1849, continued in force in this State after its formation without amendment, until the Code of this State of 1868 took effect, which was on the first day of April, 1869. Our Code of 1868 treats of dower, jointure, and courtesy in chapter 65 thereof; and section 3 of that chapter is as follows: "Where land is *bona fide* sold in the lifetime of a husband to satisfy a lien or incumbrance thereon created by deed, in which the wife has united, or for the purchase-money thereof, whether she has united therein or not, or created before the

marriage, or otherwise paramount to the claim of the wife, she shall have no right to be endowed in the said land. But if a surplus of the proceeds of sale remain after satisfying the said lien or incumbrance, or purchase-money, she shall be entitled to dower in said surplus, and a court of equity having jurisdiction of the case may make such order as may seem to it proper to secure her right."

Sections 10, 11 and 12 of said chapter 65 are as follows:

"10.   A widow having a right of dower in any real estate may recover the said dower, and damages for its being withheld, by such remedy at law as would lie on behalf of a tenant for life having a right of entry, or by bill in equity where the case is such that a bill would now lie for such dower.

"11.   In every such case a recovery of dower in such real estate in kind shall be of a third of the estate as it is when the recovery is had. Against the heirs or devisees of the husband, or their assigns, the damages shall be for such time after the husband's death as they have withheld the dower, not exceeding five years before the suit is commenced. Against one claiming under an alienation by the husband, or under a sale made by the judgment or decree of a court in his lifetime, the damages shall be from the commencement of the suit against such claimant. In either case they shall be to the time of the recovery. And if after suit brought, the widow or the tenant die before such recovery of damages, the same may be recovered by her personal representative or against his.

"12.   The two preceding sections are subject to this qualification, that any person claiming under an alienation made by the husband or under a sale made in pursuance of the judgment or decree of a court, in his lifetime, may pay to the widow, during her life, lawful interest from the time the demand is made upon him by the widow or her agent, for her dower in the lands, on one-third the value thereof at the time of such alienation or sale, or he may pay her a gross sum in lieu thereof, to be computed upon the principle hereinafter provided; and in either case the payment so made shall be a full discharge and satisfaction of the claim of the widow for dower in the real estate so alienated or sold."

The only changes made in the said third section of chapter

110 of the Code of Virginia of 1849 by the said third section of chapter 65 of the Code of this State of 1868 is by the insertion in the third-line after the word " united " and before the word "or" these words : "or for the purchase money, whether she has united therein or not," and by inserting in the third line of the last clause of said section after the word " incumbrance," and before the word " she " the words " or purchase money." These changes so far as I now see, were perhaps only in the insertion of additional words, which in fact did not operate any change in the original section or, if any, such as is not necessary here to mention ; and if anything can be deduced or argued from the insertion of said words in said section by our Legislature, it is, that the Legislature meant thereby more specifically to declare its approval of Judge Allen's conclusion in his opinion in the case of *Wilson et al.* v. *Davisson*, 2 Rob. 384. I do not now see any other reason for inserting said words; perhaps there may be reasons which have escaped my notice. Whether it was wise or expedient for the Legislature of Virginia or of this State to adopt said third section under the circumstances, is not for us to determine. Our duty is simply to ascertain by the usual means of interpretation the purpose and intention of the Legislature by its enactment and to declare and enforce it. If the act is unwise or inexpedient, that is a matter for the Legislature to consider and remedy by proper amendment of the laws and not for this Court.

The party purchasing from the husband, whether directly, or indirectly through the intervention of a court of equity or at a judicial sale is bound to take notice of the contingent dower interest of the wife. The decree of sale of the court in the said case of *Maxwell & Isham* v. *William W. Holden and Hoskinson* did not direct the sale of the land out and out including Mrs. Holden's contingent dower interest—Mrs. Holden, the plaintiff in this case, was not a party to the suit, a fact which the purchaser ought to have known, when he purchased the land at the sale by Commissioner Bassel. The plaintiff in this case not being a party to the suit, in which the land was sold, the circuit court could not have decreed the land to be sold out and out, including the plaintiff's said contingent dower interest so as to affect or bind her, and

whether the court should have so done, if she had been a party, will be considered further along. The deed from Commissioner Bassel to the defendant, Boggess in fact, only professes to vest in him "all the right, title and interest of the said William W. Holden in the said land." In fact, it seems to me, in any view it must be taken, that the defendant purchased at said commissioner's sale no title, right or interest in the said land save and except the right, title and interest therein of the said William W. Holden. The defendant did not purchase and cannot be considered as having purchased at said sale the contingent dower interest of the plaintiff in the surplus purchase-money after deducting the purchase-money lien-debt so as to extinguish the right of the plaintiff to charge the same upon the land in the hands of the purchaser. Any other view than this, to my mind it is clear, would be in effect to adopt the views of Judges Baldwin and Stanard in the said case of *Wilson et al.* v. *Davisson* as to the effect of the commissioner's sale and the confirmation thereof *quoad* the plaintiff, which I think were repudiated by the Legislature, and ignore the conclusion of Judge Allen upon this subject, which the Legislature intended to and did adopt. Rorer in his excellent work on Judicial Sales, second edi. sec. 476 and 477, p. 199 says: "The rule *caveat emptor* applies in all its rigor to judicial sales"—see note 12 to said section—476 and authorities there cited. "It is also a principle of universal justice, that a person is not bound by a judgment or judicial proceedings, to which he has not been made a party, or had not as to that matter a day in court." Powell on Appellate Proceedings 106.

Entertaining these views I do not think it is necessary to make the wife a party to a suit in equity brought to enforce the payment of an ordinary purchase-money lien-debt against the husband in his lifetime and the land purchased by him. If in such case the land decreed to be sold is sold and the sale is confirmed the purchaser only gets the husband's right and title to the land, subject to the contingent dower interest of the wife in the surplus purchase-money, which may remain after paying the purchase-money, for which the land is sold and the costs, which contingent dower-interest in such surplus, if it becomes consummated by the death of

the husband during the life of the wife, is a charge upon the
land sold in the hands of the purchaser thereof or those
claiming under him.   I do not mean to say, that there is no
case, in which it may not be proper to make the wife a party;
but as a general rule, it seems to me clear, that it is not nec-
essary in cases, in which she is entitled to be endowed in the
surplus proceeds.   She ought not to be made a party in
suits in equity to enforce a vendor's lien against the husband
during his life.   It is true that in the case of *Iaege, &c.,* v.
*Bossieux,* 15 Gratt. 83, decided in January, 1859, according
to the sixth section of the syllabus it was held, that "The wife
of the grantor in the deed of trust to secure the building fund
company, having joined in that deed, the property should be
sold out and out, and first applied to the payment of the
debt due to the company.   But she has a contingent dower-
interest in the equity of redemption; and being a party to
the suit and therefore bound by the decree in the cause, the
court should make a proper provision to compensate that
interest out of the surplus proceeds of sale, if any, before
any part of it is paid out to the assignee of the building
contract."

At pages 105 and 106 Judge Lee who delivered the
opinion of the court in that case, says:   "The remaining
point relates to the contingent dower interest of the wife of
the appellant Iaege in the property.   It is said that this was
not affected by the mechanics lien, and that the court there-
fore should not have sold the entire estate, but only the in-
terest of Iaege.   That the mechanics lien does not override the
dower interest of the wife is very clear, and if any authority
to the point were needed, it would be found in *Shaeffer* v.
*Weed,* 3 Gilm. 511.   But Mrs. Iaege had united with her
husband in the deed of trust for the benefit of the building
company, and if a sale takes place it must be to raise the
amount due the company as well as that due to the appellee.
It would be proper therefore that the property should be
sold out and out, but as the wife has a contingent dower in-
terest in the equity of redemption and being a party to the
cause, is bound by the decree, the court should make a
proper provision to compensate that interest out of the sur-
plus proceeds of sale, if any, after satisfying the amounts due

the building fund company before any part of the same shall be paid over to the appellee."

In this case the proper interpretation and construction of the said third section of chapter 110 of the Code of Virginia does not appear to have been much discussed and considered either by the counsel or the very eminent and able judge, who delivered the opinion of the court. The counsel for the appellants in their sixth objection to the decree of the court below simply say : "The sale of the property is decreed, without any provision for the widow's right of dower in the equity of redemption after satisfying the lien of the building fund company, in which she joined. That equity of redemption includes the buildings upon the lot;" and he cites *Shaeffer* v. *Weed,* 3 Gilm. R. 511; *English* v. *Foote,* 8 Smedes & Marsh, R. 444; *Selph* v. *Howland,* 23 Miss. R. 264; *Kirby* v. *Tead,* 13 Metc. R. 149; none of which relate to the proposition; they are all about mechanics liens. The counsel for the appellee in the sixth point in his brief in reply to the appellant's sixth objection to the decree says : "The deed to secure the building fund company, conveyed the dower interest ot Mrs. Iaege; and the whole property was therefore properly decreed to be sold. She had but a contingent interest in the equity of redemption and was entitled to have her interest secured out of the balance of the purchase-money; and she is a party to the suit; that could have been and can yet be done."

Thus the counsel for the appellants simply asserted in effect, that the decree is erroneous, because the sale of the land was decreed without any provision for the widow's right of dower in the equity of redemption after satisfying the lien of the building company, in which she joined; and the counsel for the appellee admitted, that she had but a contingent interest, and was only entitled to have her interest secured out of the balance of the purchase-money; and that she being a party to the suit, that could have been and can yet be done. There seems to have been no discussion whatever as to the proper interpretation of said third section between the counsel. The counsel on the one side asserted and the counsel on the other assented. Neither of the counsel mention said third section. Judge Lee does not mention

said third section in his opinion; and he doubtless gave less
consideration or attention to its true meaning in making up
and preparing his opinion, than he otherwise would, if the
proper meaning and construction of the section had been dis-
cussed by the counsel. Judge Lee was generally an able,
careful and laborious judge; and I always give great weight
and consideration to his opinions on questions, which have
been fully discussed and considered by him. But with all
due respect for the ability of Judge Lee as a judge, as well
as for his brethren on the bench, who may have agreed with
him in his opinion, I am unable to agree with him, in so far
as it bears upon the proper construction of the said third sec-
tion of chapter 110 of the Code of Virginia of 1849.

It is true, that the seventh section of chapter 121 of the Code
of Virginia of 1849 in substance provides, that when a deed
of conveyance of lands has been executed by a married wo-
man and her privy examination, acknowledgement and
declaration have been taken, &c., and the deed has been ad-
mitted to record, &c., &c., such writing shall operate to con-
vey from the wife her right of dower in the real estate em-
braced therein, &c. See also Code of 1868 of this State
chapter 73, p. 471. It is also true, that the first clause of the
said third section declares, that, where land is *bona fide* sold in
the lifetime of the husband to satisfy a lien or incumbrance
thereon created by deed, in which the wife has united, or
created before the marriage, or otherwise paramount to the
wife, she shall have no right to be endowed in the said land;
still, the last clause of said third section in effect provides,
that if a surplus of proceeds remain after satisfying the said
lien or incumbrance, she shall be entitled to dower in said
surplus, that is to say, of an amount to the extent of one-
third of said surplus, and not in a third of the surplus purchase-
money itself; and a court of equity having jurisdiction of the
*case* may make such order, as may seem to it proper to
secure her right—what case is here meant? It seems to me
that it means a case pending after the wife's contingent
dower-interest has become consummate, in which her right
to dower is asserted or claimed or the like, as in the case of
*Wilson et al.* v. *Davisson*, 2 Rob. 384, and not a case pending
during the life of her husband for the sale of the land.

Those acts of the Legislature should be considered, passed in *parimateria* and the last clause of said third section, as a saving from or qualification upon the other provisions above referred to. They were incorporated into the Codes of Virginia and of this State as one act by the respective Legislatures thereof.

Suppose in the said case in 15. Gratt. *supra*, the land had been sold without suit by the trustee in the deed of trust, in which the wife had united, and it had sold at the trust-sale for a surplus over and above the trust-debt, interest and expenses of sale, and such surplus had been paid upon the mechanic's lien-debt in that suit by the purchaser, or in the absence of such mechanic's lien-debt the surplus had been paid to the husband, which would have been proper according to the opinion of Judge Allen in said case in 2 Rob. at page 399 and also the opinion of Judge Baldwin in that case, and the wife in that event would have had no right of dower in the land or the surplus proceeds prior to the adoption of said third section, the land being converted into personalty by the sale under the deed of trust, how would the wife in that case have obtained her dower in the surplus purchase-money? and how could the court have secured her right of dower in such surplus except by charging it on the lands in the hands of the purchaser or those claiming under him by proper order, in a suit by the widow for dower under said third section against the purchaser or those claiming under him? When in such cases the legislature has declared, as in the last clause of said third section, that she shall be entitled to dower in the surplus proceeds of sale, &c., and that a court of equity having jurisdiction of the case may make such order, as may seem to it proper to secure her right, it is but fair to conclude, that the Legislature intended, that the dower so given should not only be conceded but be made secure to her by such orders of the court, as might be right and proper to secure the right and make it available; and I know of no practical or proper way to accomplish that end in the case of a deed of trust, in which the wife has united, and a sale has taken place during the life of the husband, or in any case covered by said third section, than to charge the dower of the surplus by order of the court of

equity upon the land in the hands of the purchaser or those claiming under him; and I think such was the true meaning and intent of said third section. I think it probable that said third section considered all together was intended to confine the widow's remedy in such cases for the recovery of such dower-interest, embraced by said section, exclusively to a court of equity, as being the appropriate tribunal to determine and enforce the dower-right given and intended to be secured by that section; and that when the first clause of the section says, that she shall have no right of dower in the land, it means, that she shall not be endowed therein in kind or otherwise except as provided in the last clause of this section. Suppose that a husband owns a house and lot worth $20,000.00 and gives a deed of trust upon it to secure his debt of $200.00 and his wife unites with him therein, and the husband from inability or other reason fails to pay the debt and the land is sold and after the payment of the debt a large surplus is paid to the husband, as frequently occurs, how is the wife to get her dower if she afterwards becomes his widow if she cannot charge it upon the land. In the case supposed the husband may fail to pay the debt for the very purpose of depriving his wife of dower therein in any event. It seems to me that the object of the Legislature in passing said third section was to secure the wife in the dower thereby allowed in such cases as well as others. Entertaining these views it seems to me, that it was not the purpose of the Legislature that in the case of a sale of land during the life of the husband under a deed of trust made by the husband, in which his wife united, that the purchaser at such sale should retain in his hands any part of the surplus purchase-money after paying the deed of trust debt and the costs of sale, to indemnify him against the wife's contingent dower-interest of such surplus given by the last clause of the said third section, but in the purview and meaning of said third section taken all together it should be taken and considered in such case and all other cases covered by said third section, that the purchaser at the sale bid on the land and purchased the same at the sale at a price given with reference to the wife's contingent right of dower of the surplus, and subject thereto to the extent thereof contemplated by the law, just as a pur-

chaser would purchase from the husband and contract for and receive a deed from him for the land without the wife uniting therein, or as a purchaser at a trustee's sale under a deed of trust made during the coveture, in which the wife had not united, or as a purchaser at a judicial sale made by a special commissioner under a decree of sale of a court of equity in a suit brought to enfore the lien of a judgment against the lands of the husband during his life. In each of these cases it is taken and considered that the purchaser bids and purchases at the sale with reference to and subject to the contingent dower-interest of the wife. And in neither of the cases has it ever been considered irregular or prejudicial to any person to make such sales during the life of the husband without first providing for the contingent dower of the wife and selling the land out and out including the wife's contingent dower-interest; and I am not aware, that any court in either of said cases has ever prohibited or refused a sale of the land, until the contingent dower-interest of the wife should be first protected or provided for.

The law in these cases provides for and secures the wife in her dower, should she survive her husband, against the purchaser and those claiming under him. In these cases it is under the law admittedly a charge on the land; and I see no reason why it should not be so held in the cases embraced by said third section. In the last named cases the purchaser can, if he chooses, ascertain the amount of the lien or liens, which are paramount to the wife, and bid and purchase accordingly with reference to and subject to the wife's contingent dower interest, as he bids and purchases subject to such dower interest in the other cases.

In the case of *Wilson et. als.* v. *Davisson*, 2 Rob. 384 we have seen, what was Judge Allen's conclusion in his opinion; and if the Legislature by adopting the last clause of said third section intended to adopt as the law the conclusion of Judge Allen in that case, which seems to be generally admitted, and all similar cases subsequent to its adoption by charging the dower of the wife, in case she survived her husband, upon the land in the hands of the purchaser and all persons claiming under him, which, as before stated, it seems to me, it did, then I can see no reason, why the same interpretation

and construction should not be applied to all other cases of contingent dower-interest provided for by said third section. The section itself neither indicates nor makes any distinction; and I think, the conclusion is irresistable, that it was intended by the section, that there should be one uniform rule and practice in all cases arising under said section; and that the rule and practice under it should be, as I have stated it. This construction is favorable to the security of the contingent dower-interest, in case it should become consummate, and any other would necessarily in most cases render it insecure and most probably entirely defeat it. This construction produces uniformity and harmony in practice and secures justice to the widow; and any other construction would operate confusion, uncertainty and injustice to the widow and in very many cases, if not most of them, the loss of her dower right.

In the case of *Iaege &c.*, v. *Bossieux*, 15 Gratt., Judge Lee says, as we have seen, "that the court should make a proper provision to compensate the contingent dower-interest of the wife who was a party, out of the surplus proceeds of sale," if any; but he does not indicate, how and by what rule that compensation could or should be made. In the decree entered by the court in that case at p. 107 the court declares, that it is "of opinion, that it was proper the said property should have been decreed to be sold out and out, but that inasmuch as the wife of the said Iaege is entitled to a dower-interest in the equity of redemption after satisfying the purposes of the deed of trust, and as she is a party to the cause, the court should make suitable provision for the preservation of such dower-interest out of the surplus proceeds of sale after satisfying the demands of the building fund company, before any part thereof should be paid over to the appellee." By what means could provision be made by the court for the preservation of the dower-interest? How could it be done except by the Court seizing upon a third of each surplus and withholding it from the husband or his creditor? Upon this point Judge Baldwin in his opinion in the case of *Wilson et. al.* v. *Davisson*, 2 Rob. at page 411 thus forcibly expresses himself:

"Upon the supposition of an inchoate and contingent

interest of the wife in the surplus proceeds, requiring the protection of the court by what means was such protection to be afforded? I can conceive of none other than a sequestration of the surplus, or a sufficient portion thereof, during the coverture, to await the title of the wife, if a title on her part should ever accrue. The coverture might continue for a half century. In the meantime the fund would be locked up, to the prejudice of the husband's interest and of the wife's too as connected with his. And when the coverture is determined, if by the death of the wife, the precaution will have been merely mischievious, and if by the death of the husband, the value of the wife's interest, to be ascertained in reference to that period may not exceed a single dollar. It seems to me an anomalous idea to set apart and withhold from the husband a portion of his estate, for the dower or the wife, if she should ever become entitled to it."

These views, I think, clearly show, that to attempt to provide for and protect the dower interest of the wife during the life of her husband is impracticable and against public policy and was not contemplated by the Legislature. So far as I know, no case has occurred in practice in this State or in Virginia, where the wife has been a party to a suit against the husband to enforce against his land a purchase-money lien thereon. These views of Judge Baldwin, I think, are substantially correct; and the case should have been dismissed as to the wife of Iaege in my opinion. It is true, as we have seen, that Judge Allen in his opinion in said case in 2 Rob. 384 says, that the purchaser becomes a party to the cause and may protect himself, &c.; but this is evidently thrown into his opinion argumentatively and not as an ascertained settled principle of law. The judge evidently thought, that the wife was not a necessary party to the suit to sell the land, and that it was not necessary, that she should be a party to such suit for the protection of her contingent dower interest in the land. Judge Allen does not in his opinion take issue with Judge Baldwin as to his views, which I have just quoted, nor does he in fact in any way controvert them; for he nowhere intimates, that in such a case is the wife a necessary or indispensable party.

Suppose in the said case in 15 Gratt., that the wife, who

had united with the husband, in the deed of trust had not been made a party in the cause, what course would the court in that event have taken? Judge Lee does not inform us; but I infer from what is said by him and in the decree of the court, that the court would not have directed her to be made a party as necessary or indispensable, for any purpose. He seems to have thought, that because she was a party she was bound by the decree of sale and confirmation and for that reason it was necessary to take steps in that cause to protect her dower interest. It may be observed here, that the Legislature in the adoption of the last clause of said third section not only adopted the conclusion of Judge Allen in the said case of *Wilson et al.* v. *Davisson* in that class of cases, but extended the principles of that conclusion to other classes of cases, in which Judge Allen in his opinion held, that the wife had no contingent dower in the surplus proceeds after a sale made during the life of the husband, as in the case of a deed of trust or mortgage, in which the wife during coverture had united with the husband, and a sale thereunder was had during the life of the husband, &c. See p. 399.

In the case of *Robinson* v. *Shacklet*, 29 Gratt. 107, Judge Staples in delivering the opinion of the court at pp. 107-8, in speaking of the said third section says: "The object of the statute seems to be to provide for a case in which the land is sold in the lifetime of the husband when the wife has a mere contingent right of dower. Whether the wife ought not to be a party to the suit brought to enforce the lien or incumbrance, and if so whether she is concluded by the decree; whether the court is bound to make an order at all events for the protection of her rights, or whether it has a discretion on the subject; and whether, if the court fails to make such order and directs the surplus to be paid to the husband or distributed among his creditors, the wife has after the death of the husband any remedy, and if so, what it is, are difficult questions which do not arise in the present aspect of the case, and ought not now to be passed upon. One thing would seem, however, to be very clear, that the land is not liable in the hands of the purchaser, nor is he bound to see to the application of the purchase-money, or that an order is entered for the protection of the rights of the wife." And the judge

refers to the cases, *Daniel* v. *Leitch*, 13 Gratt. 195, 211 ; *Jones* v. *Tatum*, 19 Gratt. 720.

The principles decided in the cases, to which Judge Staples refers, are perhaps correct; but in the case of. *Daniel & als.* v. *Leitch* referred to by him in 13 Gratt. Judge Moncure, who delivered the opinion of the court, at p. 210 says : "It is the business of a purchaser at a judicial sale to see, that all the persons, who are necessary to convey the title, are before the court; and that the sale is made according to the decree." As we have seen Rorer on Judicial Sales says in section 476 : "The rule *caveat-emptor* applies in all its rigor to judicial sales," and in section 477 he says, "He (the purchaser) buys at his own risk both as to title and as to quality. The rule does not apply however in case there be fraud, &c." No reference whatever is made in this case by Judge Staples to said case in 15 Gratt. I cannot agree with Judge Staples altogether in his views as above expressed, especially in the latter part thereof; and with due deference I am of opinion, that the authorities cited by him do not apply properly to such a case. The views of Judge Staples establishes the fact, that as late as September, 1877; he did not consider the subject, which I have considered, under said third section by any means settled.

In the case of *Wilson et al.* v *Davisson* 2 Rob. 384, it was held by the court, that the principles laid down in *Herbert et als.* v. *Wren et als.* 7 Cranch 380, that when land, in which there was a right of dower, is sold in a suit, to which the tenant in dower is a party, the other parties interested "have a right to insist, that instead of a sum in gross one-third of the purchase-money shall be set apart, and the interest thereof paid annually, to the tenant in dower during her life." In this Judge Allen concurred. See his opinion at pp. 402-3. There does not appear to have been any extraordinary costs put upon the case of *Maxwell & Isham* v. *Holden et al.*, in which the land in question was sold, and the vendor united in the prayer of the plaintiffs for the sale of the land to pay his purchase-money lien-debt.

I am therefore of opinion, that the plaintiff in the case at bar is entitled to be endowed to the extent and in the amount of one-third of the surplus proceeds of the sale of the land in

the bill mentioned, which may remain after deducting the amount of the purchase-money lien of said Hoskinson including interest and the costs of said suit of *Maxwell & Isham* v. *Holden*, including the expenses and commissions of sale as and from the commencement of this suit, and that the circuit court may by proper order or decree charge it upon the said land and make such other orders to secure its payment, as may be proper, and that the plaintiff is entitled in this case to her said dower with lawful interest from the date of the commencement of this suit annually upon the amount of one-third of the said balance of said surplus, unless the defendant elects to pay her a sum in gross in lieu thereof, to be computed as and of the date of the commencement of this suit, upon the principle provided in chapter 65 of the Code or this State, such gross sum when ascertained, to bear interest from the last named date.

For the foregoing reasons I am of opinion, that the decree of the circuit court of the county of Harrison rendered in this cause on the 11th day of May, 1881, is erroneous and must be reversed, and that the appellee pay to the appellant her costs about the prosecution of her appeal in this Court expended. And this cause must be remanded to the circuit court of the said county of Harrison for further proceedings therein to be had according to the principles settled in this opinion and further according to the rules and principles governing courts of equity.

THE OTHER JUDGES CONCURRED.

DECREE REVERSED.   CAUSE REMANDED.