# CHARLESTON.

BASSELL *v.* CAYWOOD, *et al.*

Submitted September 3, 1903—Decided November 28, 1903.

1. CONTINGENT RIGHT OF DOWER—*How Chargeable.*

Where land is *bona fide* sold in the lifetime of a husband to satisfy a lien or incumbrance thereon paramount to the wife's contingent right of dower and such land sells for more than enough to satisfy such paramount claim or claims and the necessary costs and expenses, such contingent right of dower in the surplus remains a charge (not assignable in kind) on such land, unless the same is sold free and acquit from such contingency. (p. 244),

2. RIGHT OF PURCHASER—*Risk Assumed.*

The purchaser who buys such land, subject to such contingency, assumed the risk thereof, and he cannot have the same charged up to or set off against the purchase price. (p. 245).

3. CASES APPROVED.

*Holden* v. *Boggess*, 20 W. Va., 62, and *George* v. *Hess*, 48 W. Va. 534, approved. (p. 245).

Appeal from Circuit Court, Harrison County.

Bill by John Bassell against John G. Caywood and others. Decree for plaintiff and defendant John G. Caywood appeals.

*Reversed.*

DAVIS and DAVIS and O. E. SCHWARTZ, for appellant.

TANEY HARRISON and JOHN BASSELL, for appellee.

DENT, JUDGE:

"This is an appeal from a decree of the circuit court of Harrison county, passed at the May term, 1903, in favor of the appellee John Bassell, against the appellant, John G. Caywood, sequestering part of the surplus funds arising from the sale of a house and lot in Clarksburg upon which two deeds of trust has been given by Alfred Caywood and wife (he being the father of appellant, John G. Caywood) to secure two debts to a creditor, Mrs. DeHass. One of the trusts was made on November 29, 1892, and the other on May 4, 1896, by Alfred Caywood and wife, and Alfred Caywood and his wife died in February, 1899, leaving the deeds of trust unsatisfied. On the 29th day of November, 1902, Edwin Maxwell, who was trustee in the deed of trust of May 4th, 1896, and who had been appointed trustee in place of Mr. Clifford, who had died, to execute the trust of November 29, 1892, sold the property in the manner provided by law and appellee became the purchaser at the price of five thousand five hundred and one dollars, of which sum he paid to the trustee, Maxwell, two thousand and nine and 73-100 dollars, being the amount of the two deeds of trust plus the cost, commissions and other expenses of sale leaving an unpaid banance or surplus of three thousand five hundred and ninety-one and 26-100 dollars, for which appellee gave his notes, with personal security, payable in one and two years from

date of sale. John G. Caywood, at the time of the sale, and prior thereto, was married, his wife being the defendant, Rosa C. Caywood. The appellant, John G. Caywood, was and still is in bad health, and the chancees all seemed, at the date of the sale, and still seem, to favor the death of appellant prior to the death of his wife, and as she, immediately after the sale, announced pretty emphatically that, should she survive him, she would claim dower in the surplus proceeds and charge it upon the propety, appellee filed his bill, setting up, substantially, what has been previously stated, alleging that defendant Rosa C. Caywood, would not, in the opinion of appellee, should she survive her husband, be entitled to take dower in the surplus proceeds and charge the value of it upon the lot, notwithstanding the decision in *Holden* v. *Boggess,* 20 W. Va. 62, and appellee prayed by his bill that the present value of the dower of Rosa C. Caywood, assuming that her husband was then dead, should be secured, set apart or sequestered, during the life of appellant, so as to exonerate the property sold in the event the husband should die first. The appellant, John G. Caywood, by counsel, entered his demurrer to the bill, which was overruled by the court, and the defendants thereupon waived the right to answer, and the cause was submitted upon the bill taken for confessed, and the court, upon hearing, passed a decree directing that appellee should pay the receiver of the court the sum of seven hundred and thirty-nine and 37-100 dollars as the cash value of the dower of Rosa C. Caywood, assuming her husband to be then dead, or that he would die upon the day after the date of the decree, and the court further directed that the fund should be held by the receiver during the life of John G. Caywood unless his wife, Rosa C., should sooner die, in which event the fund was then to be paid to him, and in the event she survived him, the principal, or rather, so much thereof as might then be equivalent of the cash value of her dower in the proceeds of sale, should be paid to her, and, in the meantime and during the joint lives of John G. and Rosa C. Caywood the interest upon the fund was to be paid to him, and from this decree John G. Caywood has appealed. The decree also provided that when such sum should be paid by appellee, he should be entitled to credit for it upon his second note given to the trustee, the first note having been paid."

This statement of the case is adopted from appellee's brief. It is evident therefrom that the object of the litigation is to have this Court review and disapprove of its decision in the case of *Holden* v. *Boggess,* 20 W. Va. 62. Otherwise the holding in the syllabus of that case that the purchaser "made his bids and purchased the land with reference to and subject to said contingent right of dower," (p. 62), must be conclusive of this case and determine it against the appellee. For if he purchased with reference to and subject to such contingent right of dower, he assumed all the risks of such contingency in addition to the purchase price he agreed to pay. Such is undoubtedly the risk he did take, for he was fully aware of the decision, although he may have also taken into consideration a belief that he might be able to have the decision nullified. This is an additional risk he personally assumed. The decision established a rule of property which ought not to be disturbed except for the most cogent reasons. The appellee's case furnishes no such reason, for he purchased with full knowledge of the rule, and which probably enabled him to purchase the property for a less price than he would have had to pay, had his present contention been at that time established by a decision of this Court. Other bidders no doubt accepted such rule as the law of the land, and were deterred from higher biding by reason of such contingency hanging over the property. So that the appellee has nothing to lose, but everything to gain if he can transfer his assumed contingency from his own shoulders to those of the appellant. And it would seem to be equitable even if the Court should overrule the former decision not to permit appellee thereby to escape the contingent risk he assumed. The decision does not and cannot hurt him, and yet it might be harmful to many others to overrule it at this time when it has been standing over twenty years unquestioned. The appellee claims that he has a superior equity to the appellant. He has no equity unless he can base it on his private belief that the law had been misconstrued and therefore he purchased the property free from the contingency involved. This would be founding an equity on a personally assumed risk. While on the other hand the appellant and other bidders had the right to believe that the property was being sold subject to the contingency. The equity it is to be regarded rests with the appellant. When the law is known in advace,

purchasers are presumed to purchase with full knowledge thereof, and it would be unfair and unjust to change it so as to effect contracts of which it has become a part. 23 Am. & En. En. Law, 28; 27 Am. Dec., 633; *Boon* v. *Bowers,* 30 Miss. 256; 64 Am. Dec. 159; *Wilson* v. *Perry,* 29 W. Va. 169. From this it is plain that the appellee is not in a position to ask this Court to overrule the case of *Holden* v. *Boggess,* although the statute may have been erroneously construed. He has neither equity nor justice on his side. If the property had for any reason been sold free from the contingency, his position might have been different. There may be cases in which it would be proper for a trustee or court to sell property free from a contingent right of dower. In such case the purchaser will be protected by a sequestration of a proper proportion of the proceeds of sale. Even if the appellee had some right to attack the decision referred to, this Court could not overrule it, though it did not properly expound the law, except for good and cogent reasons to promote the ends of justice and vindicate the law. The decision is to the effect that if a purchaser buy lands sold to pay liens thereon, and the wife of the owner has a contingent right of dower in the surplus proceeds of sale, such purchaser takes such lands subject to such contingent right of dower to the extent that the amount thereof may be charged against such lands in his hands when such dower right may become consumate, unless such dower right has been otherwise provided for or satisfied. The section of the Code construed is section 3, chapter 65, which reads as follows:

"Where the land is *bano fide* sold in the lifetime of a husband to satisfy a lien or incumbrance thereon, created by deed in which the wife is united, or for the purchase money thereof, whether she has united therein or not, or created before the marriage, or otherwise paramount to the claim of the wife, she shall have no right to be endowed in the said land. But if a surplus of the proceeds of sale remain after satisfying the said lien or incumbrance or purchase money, she shall be entitled to dower in said surplus, and a court of equity having jurisdiction of the case may make such order as may seem to it proper to secure her right."

The appellee claims that this section means, and should be so construed, that such land is to be sold entirely free and ac-

quit from such contingent right of dower, that it only attaches to the surplus and that it is the duty of a court of equity in all cases to secure such right. On first impression this undoubtedly appears to be the true meaning of the statute, but when we come to take into consideration the nature of a contingent right of dower, that it is a mere *inchoate* expectancy which may never become vested, about which no suit can be maintained, the construction of such section must be broad enough to acomplish the end of its enactment. *George et al* v. *Hess,* 48 W. Va. 534. The first clause bars her dower in the land to the extent of the paramount liens, and also prevents the dower in the surplus being assigned in kind. The second clause gives her dower in the surplus, and by the retention of the word dower makes it an interest in and chargeable against the land except as qualified by the first clause, and this is that it cannot be assigned in kind, but may be to the extent of the surplus as a measure of value charged against the same. It is also provided that in any proper case a court of equity may secure such right of dower. There may be cases in which it may be proper and right to sell the land with the consent of those in interest and with or without the consent of the doweress, free and acquit from such contingency, and in such cases it would be the duty of a court of equity having jurisdiction thereof to provide for the securing of such dower right. Ordinarily the only way to provide for such contingency is to permit the land to be sold subject thereto. To give a different construction to this section we must treat the dower right as something more than an *inchoate* expectancy, and change the common law rules in relation thereto, and it might become necessary before such sales could be made of lands in which a wife may have a contingent right of dower to have such wife impleaded, and the value of such contingency ascertained and secured and thus impose upon courts of equity much unnecessary and vain labor. How much better it is to allow the purchaser to take the risk of such contingency? If he wants to get rid of it, he can do so by purchase, as a wife has the right to relinquish the same. Thus it is plain that the conclusion reached by the court in the case of *Holden* v. *Boggess* is neither unjust nor unreasonable, although the language of the statute might be otherwise construed. If purchasers understand, as the purchaser did in this case, that in judicial and other similar

sales, they are purchasing subject to any contingent right of dower that may exist against the land, they may make their bids accordingly, and assume the risk thereof. If owners and others want the land sold free and acquit from such contingencies, they can make the necessary legal provisions for so doing. To overrule *Holden* v. *Boggess,* we must also overrule *George et al* v. *Hess,* as both these cases are dependent on the same legal principles, are constructions of the same statute and mutually support each other.

In the cases of *Robinson* v. *Shacklet,* 29 Va. 99, and *Hurst* v. *Dulaney,* 87 *Va.* 444, the Virginia court reached just the opposite conclusion to that reached by our Court in the case of *Holden* v. *Boggess.* Hogg's Equity principles 130, note. It seems to me that an examination of these cases shows that the Virginia court followed the apparent language of the statute without regard to the purpose of the enactment and without considering the quality and nature of a contingent right of dower at common law. It is true they left undetermined the question as to how such contingency was to be secured to the wife in case the land is sold prior to the death of the husband, holding that on account of its weight and importance they would leave it for future consideration when properly presented to them. This is the very question the court ought to have considered before pronouncing decree relieving the land from being charged therewith. They should have construed the statute as a whole and not by piecemeal. This Court construed it as a whole, and reached the just conclusion that in considering the nature of a contingent right of dower at common law and by statute, there was no other truly equitable way to preserve it to the wife so that she could secure it when it became consumate at the death of the husband except by making it a charge on the land when sold during coverture, and that this was the only way in which the true intention of the enactment could be effected. In doing so, the court merely held that the land, unless otherwise provided, was sold subject to the contingent right of dower, and the purchaser assumed the risk thereof. This is the usual practice in equity when such contingency being an *inchoate* expectancy hovers over land. It is too uncertain for equitable consideration, and the risk thereof is left to the purchaser. On the other hand, the Virginia

court holds that by virtue of the statute the land is sold free and acquit from, and the court finds no abiding place, for such contingency. Now, if the court had gone further and held that the common law nature of a contingent right of dower had been so changed by the statute as to give a court of equity jurisdiction thereof during the life of the husband, and that it had become a vested estate liable to be defeated on the death of the wife, prior to that of the husband, and that provision therefor should be made in all cases coming within the purview of a court of equity, whether the wife was a party to the suit or not, then its determination might be accepted as final and just. Perceiving the difficulties presented, the court purposely avoided them. In doing so, it committed error, which hereaftter will have to be rectified. In *Robinson* v. *Shacklett,* 29 Va. 107, Judge Staples says: "The object of the statute seems to be to provide for a case in which the land is sold in the lifetime of the husband when the wife has a mere contingent right of dower. Whether the wife ought not to be a party to the suit to enforce the lien or incumbrance, and if so, whether she is concluded by the decree; whether the court is bound to make an order at all events for the protection of her rights or whether it has a discretion on the subject; and whether, if the court fails to make such order and directs the surplus to be paid to the husband or distributed among his creditors, his wife has, after the death of the husband, any remedy, and if so, what it is, are difficult questions which do not arise in the present aspect of the cause and ought not now to be passed upon. One thing would seem, however, to be very clear, that the land is not liable in the hands of the purchaser, nor is he bound to see to the application of the purchase money, or that an order is entered for the protection of the wife."

In short, the court holds that the land is sold free and acquit from the contingent right of dower, but to determine what becomes of the contingency is too difficult a question for the present investigation of the Court. In the case of *Chalmers* v. *Funk & Sons,* 76 Va., 717, the Virginia court held, Judge Staples delivering the opinion, that: "In the interpretation of statutes, as of deeds, the primary object is to ascertain the intention of the lawmakers, and to give that intention effect, although the construction may not be in conformity with the let-

ter of the law. The whole statute must be taken together, and the different provisions reconciled so as to make the entire act consistent and harmonious." If the court had followed out its own rules and construed the statute as a whole instead of avoiding such construction its conclusion might not have been different from that reached by this Court, which did construe the statute as a whole in the light of common law. *Bramwell* v. *County Court,* 36 W. Va. 341. The Virginia court construes a clause of a section of the statute and leaves a dependent clause not construed because it is difficult of construction standing alone. This Court construes the whole section together and arrives at a much more equitable and just construction, although not in harmony with the apparent letter of the law. Under the decision of this Court all such sales, whether made by a court or trustee, are subject to any contingent right of dower existing at the time of the sale in the subject matter thereeof, unless otherwise provided, and the purchaser assumes the risk of such contingency ever becoming vested. Under the decision of the Virginia court all such sales are made free and acquit from all such contingencies, and they are left to take care of themselves, subject to future determination of the court on proper case presented. It does not make any difference to a purchaser which of these rules prevail, if he has notice thereof at the time of his purchase. The rule becomes a part of his purchase. He makes his purchase with open eyes, and if under it he purchases subject to the contingency, he assumes the responsibility thereof. If on the other hand he purchases free and acquit from such contingency the responsibility never attaches to him. The plaintiff in this case is not an innocent purchaser. He was familiar with the rule, and stated it to the trustee making the sale. The purchaser in *Holden* v. *Boggress* might with some degree of propriety claim to be an innocent purchaser. Not so the purchaser in the present case. He knew of the conflict between the Virginia court and this Court. He took the risk of being able to convince the court of its error. This does not make him an innocent purchaser, for he was fully aware of the dangerous character of the risk he assumed in so doing. He was probably urged on thereto by the decisions of this Court in the case of *Freer* v. *Davis,* 52 W. Va. 1; *Richmond* v. *Henderson,* 48 W. Va. 389; *Ralston* v. *Weston,*

46 W. Va. 544; and *Mayer* v. *Frobe,* 40 W. Va. 246. This case lacks the necessitiy and justice that influenced the Court in the other cases referred to and he fails to show any good cause for overruling the case attacked other than the mere letter of the law without regard to its spirit and intention. His contention cannot be sustained. The case of *Iage* v. *Bossieux,* 15 Grat. 83, is not inconsistent with this determination, as it is herein recognized that a court of equity by consent of the parties in interest may direct a sale free and acquit from a contingent right of dower. In such case the contingency does not follow the property into the hands of the purchaser, but ataches to the proceeds of sale, and it becomes obligatory on the court to make the necessary provision for the preservation of the wife's rights during coverture. The decisions of this Court in the cases of *Holden* v. *Boggess* and *George* v. *Hess* are approved, and as plaintiff became the purchaser of the property in controversy subject to the contingent right of dower, he is not entitled to the relief prayed for in his bill. The decree is reversed, the demurrer sustained, and the bill dismissed as being without equity.

*Reversed and Bill Dismissed.*