# CHARLESTON.

## CARVER v. WARD *et al.*

Submitted January 10, 1918.  Decided January 15, 1918.

1.  BANKRUPTCY—*Sale—Lien—Dower in Surplus.*

     In an involuntary bankruptcy proceeding the wife of the bankrupt, who had previously joined her husband in the execution of a trust deed lien on his land and who was also a creditor of the general class, appeared before the referee at a convention of the creditors and orally stated that she was willing for the land to be sold free of her dower right, ''and that she receive a gross sum to be determined according to law out of the purchase price of said real estate in full payment and satisfaction for her said contingent right of dower''; and the land was ordered sold and was accordingly advertised and sold free of her dower right, but no provision was made for the payment of any gross sum in lieu of dower and none was in fact paid to her, and after discharging the lien, all the residue of the purchase money was applied on the bankrupt's debts.  After the bankrupt's death his widow brought this suit to recover commuted dower in the surplus proceeds of sale, *held*:

     She is entitled to dower in said surplus, which may be enforced as a lien against the land in the hands of any subsequent holder. (p. 647).

2.  SAME—*Dower—Decree of Bankruptcy Court.*

     The decree of the bankruptcy court is not an adjudication of her dower right, the same not having been made an issue by any pleading.  (p. 648)).

3.  DOWER—*Enforcement—Estoppel.*

     Her consent to a sale of the land free from her dower right being conditional and the condition never having been complied with, and no provision having been made for her protection, she is not estopped to assert her dower as a lien against the land.  (p. 648).

4.  BANKRUPTCY—*Consent to Bankruptcy Sale—Record—Notice to Purchaser.*

> Her conditional consent being a matter of record, it was incumbent on the purchaser to see that the condition, if possible of performance, was complied with, or that she was otherwise protected, before payment and distribution of the purchase money. (p. 648).

> (RITZ, JUDGE, dissenting).

Appeal from Circuit Court, Kanawha County.

Suit by Fannie J. Carver against Charles Edwin Ward and others. Decree for plaintiff, and defendants appeal.

*Affirmed.*

*Price, Smith, Spilman & Clay,* for appellants.

*L. D. Vickers,* for appellee.

WILLIAMS, JUDGE:

On the 26th day of April, 1912, on petition of his creditors, Enoch Carver was adjudged a bankrupt by the district court of the United States for the southern district of West Virginia, and the bankruptcy proceedings were referred to W. G. Mathews, referee in bankruptcy. A schedule of his creditors was filed, among whom was the bankrupt's wife, Fannie J. Carver, who claimed three debts, one of $5,000, one of $5,531.50, and another of $186. Pursuant to notice given by the referee, the creditors met and elected George E. Sutherland trustee in bankruptcy. On the 26th of June, 1912, the referee ordered a sale of the bankrupt's lands, the order containing the following recital: "And it appearing at this meeting that the said Fannie J. Carver wife of the said Enoch Carver, will file and prove her claim for her contingent right of dower in each of the three parcels of real estate aforesaid, and that she is willing that said three parcels of real estate, and each of them, be sold, and that she receive a gross sum to be determined according to the law out of the purchase price of said real estate in full payment and satisfaction for her said contingent right of dower, and all her other dower rights or other interests therein." The referee then ordered the lands to be sold free and clear of "all the dower rights

of said Fannie J. Carver therein." After advertising notice
of the time and place of sale, and that the property would
be sold free and clear of all liens and encumbrances, the trus-
tee, on the 17th of August, 1912, sold a certain lot situate on
Kanawha Street at public auction to Charles Ward, since de-
ceased, at the price of $27,100. Mr. Ward complied with the
terms of sale, and thereafter paid the purchase price in full.
On the 20th of August, 1912, the sale was confirmed, and
thereafter the proceeds collected and disbursed to the credit-
ors of the bankrupt under the direction of the referee. A
deed of trust lien, dated July 21, 1909, in favor of the Life
Insurance Company of Virginia existed on said Kanawha
Street property, in the execution of which Fannie J. Carver
had joined her husband, and on which there was a balance
due of $9,315, which was discharged out of the proceeds of
sale. Enoch Carver died October 16, 1915, and in February,
1916, Fannie J. Carver, his widow, brought this suit in the
common pleas court of Kanawha county against Charles Ed-
win Ward, Harold M. Ward, Nellie G. Ramsden and Mar-
garet G. Ward, the heirs at law and widow of Charles Ward,
deceased, asserting that she is entitled to dower in $17,785.00,
that being the surplus of the purchase price paid by Charles
Ward, deceased, for the Kanawha Street lot, remaining after
payment of the deed of trust lien thereon, and praying that
her said dower be made a charge on the land. Defendants
answered and admitted many of the facts alleged in plain-
tiff's bill, but denied that she was entitled to dower, and al-
leged that the said lot was sold free and discharged from all
the dower interest and right of plaintiff. They averred that
plaintiff was a party to the bankruptcy proceeding and had
appeared therein and consented that the lot should be sold
free and clear of her contingent right of dower, and agreed
that she was willing to accept a gross sum, to be determined
according to law, in lieu thereof; and averred that she had
received the benefit of the enhanced price at which the pro-
perty sold, in the way of an increase in the per centum paid
on her claims against her husband's estate. But no part of
the fund was turned over to Fannie J. Carver as a consid-
eration for the release of her contingent dower right, and no

order was made by the bankruptcy court for the purpose of protecting such dower right.

It is claimed that, because it was necessary to sell the land in the lifetime of her husband to satisfy a lien thereon, which was paramount to her dower right, section 3 of chapter 65, Code of West Virginia, denies to plaintiff the right to be endowed in the land, and entitled her to commuted dower only in the surplus proceeds remaining after discharging the paramount lien; that she could look only to that fund for satisfaction, and has no right to pursue the land in the hands of a purchaser who has paid the full purchase price. That she is not entitled to dower in the land, in kind, is well settled. But in a number of prior decisions by this court, that statute has been construed to give the widow a lien on the land for the value of her commuted dower in the surplus, after her dower has become consummate, and that said lien follows the land into the hands of any subsequent alienee, however remote. *Holden* v. *Boggess*, 20 W. Va. 62, and *Russell* v. *Caywood*, 54 W. Va. 241. In the latter case it was held that the wife's contingent right to dower in the surplus remained a charge upon the land, but not assignable in kind, unless the land was sold free and acquit from her contingent dower. And in *George* v. *Hess*, 48 W. Va. 534, a creditors' suit to sell the lands of said Hess to satisfy liens thereon, some of which were paramount to the wife's contingent dower right and others subordinate thereto, the proceeds of sale were more than sufficient to pay off the paramount liens. Mrs. Hess, wife of the debtor, filed a petition in the suit praying that a portion of the fund be set apart for the protection of her contingent dower right, and the court dismissed her petition. She appealed to this court and it affirmed the decree on the ground, not that she was not dowable in the surplus, but for the reason stated in the opinion, that no provision need be made out of the proceeds of sale to meet the wife's dower, if and when it should become consummate. And in *Barbour* v. *Thompkins*, 31 W. Va. 410, likewise a creditors' suit, where there were judgment liens against the debtor's land, all of which were subordinate to the wife's right of dower, and a trust deed lien in which the wife had joined, which was an-

terior to some of the judgments and subsequent to others, and all the proceeds of the sale were not necessary to the satisfaction of the trust deed lien, this court held that it was necessary to sell the land subject to the wife's right of dower. The foregoing decisions settle the propositions, that where land of the husband is sold in his lifetime to satisfy a lien paramount to the wife's contingent dower right and there is a surplus remaining after the discharge of such lien, the wife becomes entitled to dower in such surplus on the death of her husband, and has a right to charge the land with the payment of it; and that her contingent dower right is not such property right as entitles her to demand that a fund be set apart to meet the contingency of its becoming vested. Upon its vesting it becomes a lien upon the land, enforceable even though the land has passed to a remote vendee.

The bankruptcy act does not alter or affect the wife's right to dower in her bankrupt husband's lands. Her right depends upon the laws of the state where the land is situate. The trustee in bankruptcy took only such title to the lands as the bankrupt himself had. Plaintiff's dower right was not a part of her husband's estate and was, therefore, not liable to be sold for the purpose of paying his debts. But, it is claimed, the land was decreed by the bankruptcy court to be sold, and was actually sold free of plaintiff's dower right and that her only remedy was by appeal from the decision of that court. Her dower right was not litigated in that court, it was not in issue by any pleading in the cause. The only purpose stated in the petition, which is apparently the only pleading in the cause, was to have Enoch Carver declared a bankrupt and his property sold and the proceeds applied on his debts. There was no issue and consequently there could have been no decision affecting plaintiff's dower right, as a matter adjudicated. Hence, the doctrine of res judicata has no application.

But counsel more earnestly, and with much more plausibility, we think, insist, that as plaintiff appeared before the referee, either in person or by counsel, and consented to a sale of the land free and acquit from her contingent right of dower, and as it appears the land was so sold and she received

the benefit of the advance thereby obtained in price, in the
way of an increase in the dividends paid on her claims against
her husband's estate, she is thereby estopped to claim a lien
on the land for her dower. This is really the vital point in
the case. No writing was filed by her with the referee, stat-
ing the terms of her consent, but the language of the order
reciting it shows that it was conditional. Coupled with it is
the provision, "that she receive a gross sum to be determined
according to law out of the purchase price of said real estate
in full payment and satisfaction for her said contingent right
of dower." This condition was not complied with, and in
fact we do not see how compliance with it was possible, for
there is no means provided by law whereby the value of the
wife's contingent dower right may be ascertained. It is not
property and has no commercial value capable of ascertain-
ment. It is a mere contingency wisely ordained for the pro-
tection of the wife in case she is left a widow, an event which
may never happen, and until that contingency does arise, the
law does not regard the inchoate right as property having
transferable quality or commercial value. The law makes
provision for its release or extinguishment, but none whereby
it may be passed to another. By joining her husband in the
execution of a deed of conveyance, the wife simply releases
her contingent right and is thereby estopped to assert claim
to dower; she does not convey anything. Plaintiff's consent
being conditioned on her receiving out of the proceeds of
the sale about to be made, a sum of money not stated, and
for the ascertainment of which the law furnishes no means,
and no provision having been made by the bankruptcy court
for paying to her any sum in consideration for her alleged
consent, and not having received anything on that account,
she is not estopped. Her consent being conditional only, and
the condition not having been complied with, it would be
very unjust and inequitable to apply to her the doctrine of
estoppel. She did nothing to mislead the purchaser. Her
consent appeared of record and he was bound to know that it
was conditional only, for the doctrine of *caveat emptor* ap-
plies and he is affected by what the record discloses. He
therefore knew, or should have known, that if the condition

was impossible or was not complied with, plaintiff's consent was not binding. Moreover, the proceeds of sale in his hands was the only fund which could have been applied to the satisfaction of her dower right, and it was incumbent on him to see that she was properly protected before paying all the purchase money to the trustee. In the event she was not otherwise protected, he could have retained enough of the purchase money in his hands to protect himself in case her dower should become consummate. *Porter* v. *Lazear,* 109 U. S. 84, in some of its aspects is similar to this case. It grew out of a bankruptcy proceeding in the United States district court for the western district of Pennsylvania, under the old bankruptcy act, respecting the wife's dower right in the lands of the bankrupt. There, the court ordered a sale of the bankrupt's land clear of all liens and encumbrances, except a certain mortgage for $2,550, and it was accordingly advertised and sold. It brought $465, for which the purchaser executed his note. At the time of the sale the bankrupt had a wife, who was still living when the suit to which we have referred was brought. It was a suit by the assignee in bankruptcy against the purchaser to recover the money due on the purchase money note, brought in the state court. The assignee executed and tendered the purchaser a deed for the property and demanded payment, which was refused on the ground that the land was encumbered with the right of dower. The supreme court of Pennsylvania gave judgment for the defendant, and the assignee in bankruptcy appealed the case to the Supreme Court of the United States, and that court affirmed the judgment of the state court, holding that the purchaser had a right to retain the purchase money in his hands as a protection against the encumbrance of the dower right of the wife of the bankrupt.

The fact that plaintiff received her share of the proceeds as a creditor of her husband's estate does not affect her right to dower. Her claims were of the general class, and on debts of that class there were paid two dividends aggregating a little over 15%. The small increase in dividends which she may have received because of the advance in price for which the property was sold, on the supposition that she had re-

leased her dower, does not estop her from now asserting it as a liability against the land. There is no means of ascertaining how much less the property would have brought, if it had been ordered sold subject to her dower, and hence no way to determine how much more she received as a creditor than she would otherwise have received. But judging from the small per centum that was in fact paid on her claims, the additional amount she thus received is certainly very small, and is no consideration for the release of dower.

The order of the circuit court refusing an appeal from the decrees of the common pleas court is affirmed.

*Affirmed.*

RITZ, JUDGE, (dissenting) :

Section 3 of chapter 65 of the Code provides:— ''Where land is bona fide sold in the lifetime of a husband, to satisfy a lien or incumbrance thereon, created by deed in which the wife has united, or for the purchase money thereof, whether she united therein or not, or created before the marriage, or otherwise paramount to the claim of the wife, she shall have no right to be endowed in the said land. But if a surplus of the proceeds of sale remain after satisfying the said lien or incumbrance, or purchase money, she shall be entitled to dower in said surplus, and a court of equity having jurisdiction of the case may make such order as may seem to it proper to secure her right.'' It seems to me that the several different constructions placed upon this section of the Statute by this court are, to say the least, very strained, and cannot be supported either upon reason or by authority. The statute is taken from the Code of Virginia of 1849, and it had been construed in that state by the court of last resort thereof before any construction of it by the courts of this state. In the case of *Robinson* v. *Shacklett*, 29 Gratt. 99, the Supreme Court of Virginia held that where a married woman joined in a deed of trust with her husband to convey land to secure a debt, and there was a surplus after paying off the deed of trust upon the sale of the land, she was barred of any interest in the land, but must look to the surplus alone, and that the purchaser took the title to the real estate free and clear of

any claim for dower. After the decision.of this case by the Court of Appeals of Virginia, the same question arose in this state in the case of *Holden* v. *Boggess*, 20 W. Va. 62. The court in that case held that the statute could not mean any such thing as the Court of Appeals of Virginia construed it to mean; that while the statute says that such married woman shall not have the right to be endowed in the land, it did not mean that, and proceeded to give to the statute an entirely different construction, holding in effect that when the land was sold the purchaser acquired all of the title or interest in it, but if there was a surplus after paying the lien that the widow's dower in this surplus would be a charge upon the real estate. In reaching this conclusion in that case, in my judgment well recognized canons of statutory construction were violated and utterly disregarded. It is a uniform rule of statutory construction that where the language of a statute is clear and plain, giving to the words used their ordinary signification, the courts will not indulge in legal refinements or scholastic reasoning in order to give those words another or different effect, unless to give to them their ordinary meaning will violate some provision of the fundamental law, or some well established rule of public policy. It is conceded in all of the opinions which will be hereafter noted that there is no ambiguity nor uncertainty in the language used in this statute; that the meaning intended by the legislature is entirely plain; nor is it contended for a moment that it is necessary to vary the ordinary meaning of the words used in order to avoid conflict with any provision of the constitution or rule of public policy.

There is another canon of construction which was violated, and that is that where a statute is taken from the laws of another state, it will ordinarily be given in the state where it is adopted the construction given to it by the courts of the state from which it is taken. As before shown, this statute had been construed by the Court of Appeals of Virginia prior to the rendition of the decision in *Holden* v. *Boggess,* but not-withstanding that fact this court refused to give any consideration to the construction placed upon the statute by the court of last resort of the state from which it came. The

Court of Appeals of Virginia has subsequently had the ques-
tion before it in the case of *Hurst* v. *Dulaney,* 87 Va. 444,
and again held that the widow had no right of dower in real
estate where she had signed a trust deed, even though there
was a surplus, and that the purchaser of such real estate at
said sale took it free and clear of dower, and was under no
obligation to see to the application of the purchase money.
It is hard to see how any other conclusion can be arrived at
when we look to the language of the statute above quoted.
It is just about as plain as it could be written.   While I have
no doubt that the legislature in enacting this statute meant
just what it said in plain language, I would hesitate to over-
rule the construction placed upon it by this court if that con-
struction had been a uniform one, but as I read the decisions
of this court construing this statute they are in conflict with
each other; there is no uniformity of construction; and inas-
much as the statute cannot now be construed in accordance
with our former decisions without being in conflict with some
of them, we had as well give to the statute its fair and proper
construction, and establish a rule which will obviate the ne-
cessity of resort to legal refinements in order to furnish a
basis for the court's decree.   As before stated, the case of
*Holden* v. *Boggess* held that when a sale was made in a case
like this, the purchaser acquired the land; that the whole of
the estate in the land was sold, but that if there was a sur-
plus at that sale the married woman, when she became a
widow, would have dower in that surplus, and that this
would be a charge upon the real estate.   The effect of the
holding was that the purchaser must see that the contingent
interest of the married woman was protected.   In the case of
*Barbour* v. *Tompkins,* 31 W. Va. 410, it was held to be error
to sell the real estate in case there was a surplus except sub-
ject to the widow's dower.   The effect of the holding in that
case is that what is sold is not all of the real estate, but so much
of the real estate as is necessary to pay the lien debt, and
then the balance of it subject to the widow's dower therein.
The holding is in direct conflict with the statute, as well as
with the holding in *Holden* v. *Boggess.*  The case of *George*
v. *Hess,* 48 W. Va. 534, is cited.  In that case a husband's

lands were sold, and after the payment of liens of deeds of
trust, in which the wife had joined, there was a surplus, and
she, before her husband's death, filed a petition asking to be
protected in that surplus.  The court held that inasmuch as
it was not certain whether she would ever have any interest
at all, it depending entirely on her surviving her husband,
her petition could not be maintained, notwithstanding the
plain command of the statute to the court to make such order
as might be necessary for her protection.  The case of *Bassell*
v. *Caywood,* 54 W. Va. 241, is also cited.  In this case the land
of the debtor was sold under a deed of trust in which his
wife had joined.  It brought more than enough to pay off
the lien.  The purchaser under the deed of trust filed a bill
asking that provision be made for the widow's dower in the
surplus, in case it should ever become consummate.  The hold-
ing in that case is that the land was sold subject to the
widow's contingent right of dower in such surplus, and the
purchaser having bought it under those conditions could not
apply for the protection that he sought, for the reason that
it would be something that he was not entitled to, the court
there holding contrary to *Holden* v. *Boggess* that the mar-
ried woman's contingent interest in the excess, after satis-
faction of the trust deed lien, was not sold at all; but it was
likewise held, contrary to the doctrine announced in *Barbour*
v. *Tompkins,* that in a particular case such real estate might
be sold free and clear from the widow's contingent right of
dower.  A careful persual of these cases will show their in-
consistencies, and from them it is impossible to tell just what
a purchaser does get in a case like this.  It would depend al-
together upon which one of the cases this court follows.  This
being true, it necessairly follows that any holding at all must
result in overruling some of the cases already decided.  That
being true, I think we had as well overrule all of them and
give the statute a sensible and reasonable construction.

There is, however, another reason why the decree com-
plained of here should be reversed.  Mrs. Carver was a party
to the suit in bankruptcy in which this real estate was sold.
The decree entered by the referee in bankruptcy ordering it
to be sold shows that she appeared, and that she agreed that

the real estate be sold free and clear of her claim of dower therein, and that she further agreed that she would file a petition asking for a commutation of dower out of any excess of purchase money that might be obtained. In order to overcome this solemn agreement upon her part the majority opinion holds that there was a duty upon the purchaser to see to the application of the purchase money, and further holds that notwithstanding Mrs. Carver undertook with the court to file her petition asking for commutation in money, she was under no obligation to do so. In the opinion of *Bassell v. Caywood* it is clearly recognized that real estate in a case like this might be sold free and clear of dower, and the opinion in the instant case necessarily overrules the conclusion reached in that case. It also overrules the conclusion reached in *Barbour* v. *Tompkins,* for the conclusion in this case is that the land was sold free and clear of the dower, and the duty was on the purchaser to see to the application of the purchase money, while in *Barbour* v. *Tompkins* it was held that in no event could it be so sold. This illustrates the irreconcilable conflict arising upon the decisions of this court upon this question. I say that when a married woman joins in a deed with her husband conveying his real estate to secure a debt, she thereby waives any claim of dower therein; that she cannot enforce any interest in the real estate, but that she must resort to the surplus which arises from the sale thereof under the trust deed. When she signs the deed she thereby undertakes to look to the surplus because that is the law, and when a sale is made, if a surplus is produced, all she would have to do is to follow the plain language of the statute and apply to a court of equity for protection in that surplus. But it is said that this protection would be hard for a court of equity to afford. Courts of equity do not shrink from protecting the rights of people charged to them simply because it is difficult. The very fact that it was difficult for courts of law to fully protect the rights of litigants brought into existence courts of equity, and are we to hold that they have become impotent to perform the very functions that brought them into

being? Why cannot a court of equity sequestrate a sufficient amount of the surplus to fully protect the widow, should she ever be entitled to the dower, pay the interest on it to the parties entitled to receive it, and hold it until it is determined whether this right of dower ever will exist, and should it at any time in the future come into being, commute the same in money, pay this amount to the widow, and disburse the balance to the parties entitled to it? There is no difficulty in doing this. Courts of equity surmount many problems of much more difficulty, and it does not occur to me that a court of equity which makes this excuse for refusing to execute the plain commands of the statute justifies its existence.

There is still another reason why the decree in this case should be reversed. It will be observed that there was a surplus after the satisfaction of the trust deed lien in this case of something like seventeen thousand dollars which was disbursed to creditors of the bankrupt. If the doctrine announced in the majority opinion had been applied, and the widow protected in this surplus, it would have been reduced to the extent of more than three thousand dollars, so that instead of there being for disbursement to the creditors the sum of seventeen thousand dollars there would have been in round numbers the sum of fourteen thousand dollars. This would have reduced the dividends actually paid to Mrs. Carver to a considerable extent. An inspection of the record shows that she received about one-twentieth of the fund as dividends on her claims, so that out of this three thousand dollars she actually got the sum of about one hundred and fifty dollars to which she was in no wise entitled under the holdings in this case. Can it be said that a party may come into a court having jurisdiction of the case, take advantage of the decree of that court disbursing the fund by which his interest is affected to this extent, and then afterward attack that decree and overthrow it, as was done in this case? It occurs to me that by receiving these dividends on the fund which the court says should have been set apart for her protection, she is estopped to say that the decree of the bankruptcy court is erroneous, or to say that anybody should have seen to the application of the fund, a substantial part of which was paid to her.