# CHARLESTON.

FANNY B. TOMPKINS, *et al.* v. MOLLIE KYLE, *et al.*

Submitted February 20, 1924.   Decided March 4, 1924.

1. PARTITION—*Not Necessary to Allege That Deceased Died Intestate.*

    In a suit for partition of the lands of a decedent it is not necessary to allege in the bill that the deceased died intestate. (p. 588).

2. SAME—*Particularity With Which Property Sought Partitioned Must be Described Stated.*

    In the bill in such suit it is not necessary to describe the land sought to be partitioned with exact particularity, as by metes and bounds. If it be a city lot a statement of its exact location, exact frontage on a street named with its approximate depth, a description of the dwelling thereon, and by whom occupied, is sufficient.   (p. 588).

3.  SAME—*Decree of Sale Where Proceedings for Purpose of Satis-
    fying Liens out of Proceeds Erroneous Unless Legal Title
    Before Court.*

    While in such suit the holder of a trust lien debt on the land
    is not a necessary party, yet if such lien creditor be made a
    party and the bill and proceedings are for the additional pur-
    pose of ascertaining the liens and satisfying them out of the
    proceeds of a sale prayed for, it is error to decree a sale
    without having the legal title before the court.   (p. 588).

4.  DOWER—*Decree of Sale Without First Assigning Dower Held
    Erroneous.*

    In a suit brought by an heir at law to partition the land of
    the decedent and to assign dower therein it is error to de-
    cree a sale of the land upon finding that it is not susceptible
    of partition in kind and the interests of those who are en-
    titled to the land or its proceeds will be promoted by a sale
    of the entire land, without first assigning dower, or adjudi-
    cating the dower interest.   (p. 591).

5.  PARTITION—*Decree of Sale Before Interest of Parties Adjudi-
    cated Erroneous.*

    Where in such partition suit the decree purports to sell the
    land in its entirety, as in this case, and directs retention of the
    purchase money for proper distribution, it is erroneous, if the
    interests of those who are entitled to the land or its pro-
    ceeds have not been adjudicated.   (p. 594).

Appeal from Circuit Court, Cabell County.

Suit by Fanny B. Tompkins and husband against Mollie
Kyle, Harry Baumgardner, and others.  From a decree for
plaintiffs, the named defendants appeal.

*Reversed and remanded.*

*Northcott & Yost* and *George I. Neal,* for appellants.
*Brown, Jackson & Knight* and *Harold A. Ritz,* for appellees.

LIVELY, JUDGE:

James Baumgardner died (the date not stated) seized of
a house and lot on the southwest corner of the alley on the
west side of Ninth street between Fifth and Sixth avenues
in the city of Huntington, leaving three children, Fanny B.,
now the wife of G. H. Tompkins, Mollie, now the wife of

Robert Kyle, and Harry Baumgardner, who are his heirs at law. His wife, Lucinda, survived him and is now living, and is in possession of the dwelling house on the lot, dower never having been assigned to her. Mollie Kyle lives with her in the mansion house, and she and her mother have resided there for many years. In his life time he executed a deed of trust upon the lot to secure a debt of $1500 to Mrs. C. C. Remele, making T. A. Wyatt (who has since died) trustee therein. No trustee has been substituted.

The bill, filed by Fanny Tompkins and her husband, is against her sister, brother and mother and against Mrs. Remele, and is for the purpose of assigning to the mother her dower interest in the lot and having a partition among the heirs. It is charged that there are no debts against the estate except the debt to Mrs. Remele. It is also charged that the lot is not susceptible of partition and that it would be to the best interest of all parties concerned to sell the same and partition the proceeds. Neither Lucinda Baumgardner, the widow, nor Mrs. Remele, the lien creditor, made appearance in the suit. Mrs. Kyle and her husband answered the bill admitting the material allegations thereof and setting up an agreement dated November 20, 1916, between the mother and the heirs by which they appointed Harry Baumgardner their agent to sell the lot in controversy at a price to be fixed and agreed upon by all the parties. She admits that there is a debt owing to Mrs. Remele as charged in the bill, but says the creditors having claims or demands against the estate are not demanding payment; but does not say that there are any creditors except Mrs. Remele. The substance of the answer is that Harry Baumgardner should sell the property under the terms of the agreement, instead of it being sold under decree of the court. She does not deny that the property is not susceptible of partition, nor does she deny that it would be to the best interests of all parties concerned to sell the property and divide the proceeds. She says her mother is now about eighty-six years old, but makes no allegation as to her dower interest in the property. Harry Baumgardner answered, admitting the material allegations of the bill, saying that the only debt against the estate was the Remele lien except

that the estate owed him and his sister Mollie Kyle for moneys expended for the benefit of the estate but that none of these debts were pressing. He says that until recently his mother desired to reside in the old homestead until such a time as she and the children might agree on a sale thereof; and he also sets up the agreement of agency to him relied upon by Mrs. Kyle, to defeat a sale by the court. He says he could sell the property for an advantageous price if it was not for the institution and pendency of this suit. He does not deny that the property is not susceptible of partition; nor does he deny that it would be for the best interests of all parties concerned to have a sale thereof; in fact, his answer is a practical admission of these facts; and he relies upon his contract or agreement of agency to sell, to defeat what the plaintiff is attempting to accomplish by this suit. The difference between the heirs seems to be concerning the method of sale and not that the property should not be sold.

Plaintiff filed a special replication to the answers denying that either Harry or Mollie had expended any money on the property, denies that they have paid taxes or rents; admits the execution of the agreement by which they all appointed Harry to sell the property for the best price obtainable, in accepting which price they should all agree; but says he has had ample opportunities to sell since the year 1916 but the heirs have never agreed upon the price, and although many offers have been made for it, to which she agreed, Harry persistently refused to accept any of them; and seeing that the property would not be sold under this agreement and that she was getting no benefit from her inheritance she, on the 15th day of June, 1922, revoked the power given to Harry in the agreement referred to and served notice thereof upon him in writing, a copy of which with the service thereof is made a part of her special replication. Upon the coming in of the answers and special replication and upon a demurrer to the bill by defendants Mollie Kyle and Harry Baumgardner, which was overruled, the court referred the cause to a special commissioner for the purpose of ascertaining what personal estate, if any, James Baumgardner had at the time of his death and what disposition had been made thereof; and if any personal

estate was now in existence for the payment of debts; whether an administrator had been appointed; what debts James Baumgardner owed at the time of his death, to whom payable, their nature and respective amounts and priorities; and to report what real estate was owned by James Baumgardner at the time of his death. The commissioner, after giving due notice, made a report that he was unable to find that decedent had any personal estate at the time of his death; that no administrator had ever been appointed; that at the time of his death he had executed a note to Mrs. Remele dated May 9, 1899, for $1500, due in twelve months from date, with 8% interest payable monthly, with the privilege of renewing the note for two years at its due date, and secured by a deed of trust on the property in question, describing it; and being unable to find that any payments had been made thereon he ascertained the amount to be $4,390, and reported it as a first and only lien against the property in controversy. He also reported that the taxes for 1922, amounting to $736.35, had not been paid. Due notice of the completion of this report was served on the attorneys together with a carbon copy of the report, and it was retained in the office of the commissioner for the statutory time for exceptions, and none were filed thereto. Upon the coming in of the report the court entered the decree complained of, confirming the report, finding that plaintiff Fanny Tompkins and defendants Mollie Kyle and Harry Baumgardner were the owners of the property in controversy, describing it, and adjudicating that Lucinda Baumgardner, the widow, had a dower interest therein. The Remele debt is adjudicated as a first lien upon the property and the unpaid taxes as a second lien. The court found that the property was not susceptible of partition and that the interests of the owners would be promoted by a sale, and directed a sale.

Mollie Kyle and Harry Baumgardner have appealed.

Appellants insist that the demurrer should have been sustained :(1) because the bill does not allege that James Baumgardner died intestate; (2) that the property was not sufficiently described; (3) that the bill does not pray that the interests of the owners be ascertained before sale was decreed.

We think the bill was sufficient. Where a person is shown to be dead the presumption is that he died intestate. 21 Ann. Cas. 299, and cases there collated. The property is described as a certain lot in the city of Huntington, Cabell County, West Virginia, situate on the southwest corner of the alley on the west side of Ninth street, between Fifth and Sixth avenues in said city, which lot fronts thirty-three and one-third feet on Ninth street, running west on the alley about one hundred and ten feet, upon which is situated a brick building mansion house, in which the deceased lived at the time of his death and in which his widow now resides. We think this is a sufficiently definite description of the property.

The averment in the bill that the three children named are the only heirs at law, is a sufficient averment that each owns a one-third interest therein, subject, of course, to the widow's dower. The decree ascertains that the heirs each have a one-third interest therein. There can be no question of the correctness of that finding.

The second alleged error is that the decree of reference did not require the commissioner to ascertain the interests of the parties to the suit; and that there was no requirement as to a finding of debts against the property or of mutual debts between the parties issuing out of the occupancy of the property, payment of taxes, and repairs; also that the contract of agency for the sale of the property with Harry Baumgardner was totally ignored in the reference to the commissioner; and that because there was no direction to the commissioner to find and no finding that the property was not susceptible of partition. As to requiring the commissioner to report the interests of the principal parties in the suit, we think the allegations of the bill and admissions of the answer that they are the children and only heirs at law of decedent would as a matter of law fix their inheritance in the property, their interests therein, without the aid of inquiry by a commissioner. It was a fact admitted in the pleadings. The commissioner was directed to ascertain the debts against the estate, and found that there was only one, the Remele debt, which was reported as a first lien. Whether there were mutual debts arising out of the occupancy and up-keep of the prop-

erty between the parties does not appear.  However, there was ample opportunity given to the parties to present these matters, and no doubt if they had been presented to the commissioner, before whom they all appeared, it would have been considered and reported under the requirement to report anything which either of the parties might require or the commissioner deem pertinent.  Having neglected to do so, the appellants can not now complain.  Indeed, in a suit for partition, it is not necessary to make lien creditors of a decedent parties to the suit.  The purpose of a partition suit is not to settle indebtedness but to divide the inheritance between those entitled thereto, and if a division be made the liens are not disturbed.  *Helmick* v. *Kraft,* 84 W. Va. 159; *Childers* v. *Loudin,* 51 W. Va. 559.  No such requirement is found in our law governing partitions.  Section 3 of chapter 79, our chapter on partitions, directs that where there is a sale in partition and a distribution of the proceeds according to the respective rights of those entitled, the court should take care, "when there are creditors of any deceased person who was a tenant in common, joint tenant or coparcener, to have the proceeds of such deceased person's part applied according to the rights of such creditor."  There is no requirement that the lien creditors of cotenants holding liens on the whole of the property, or of one or more of them, holding liens on one or more undivided interests, are necessary parties to a partition suit.  However, the parties here have designed to sell the entire property free from incumbrances, and with that purpose in view have made the lien creditor, Mrs. Remele, a party.  Section 1 of chapter 79, says, the court, in a partition suit, "may take cognizance of all questions of law affecting the legal title, that may arise in any proceeding."  In the bill and answers the parties have set up the trust lien debt of Mrs. Remele, and we think the court could take cognizance thereof in the proceeding.  The court and the parties have undertaken to combine in the partition proceeding a discharge of the liens against the property, and the debts against the estate.  Notice to lien holders to present their claims to the commissioner for adjudication was published and posted six successive weeks

in a Huntington newspaper in conformity to the statute, and
a notice to the creditors of James Baumgardner was published
and posted by the clerk as required by the statute to present
their claims to the commissioner on a day stated.  It may
be observed here that one of the points of error is that notice
to the lien creditors and to the parties, of the commissioner's
sittings, was never posted at the front door of the court house
as required by section 4, chapter 12, Code, and as required
in the decree.  This defect in the record has been supplied
by a certificate from the clerk that the notice was actually
posted and published as required by law.  We do not think
that there was error in disregarding the contract of agency
with Harry Baumgardner entered into between the parties
for a sale of the real estate, either by the court or by the com-
missioner.  The substance of that agreement was that Harry
would solicit purchasers and if all the parties agreed upon
the price offered a sale would be made.  No date for its ex-
piration was given.  No beneficiary interest accrued to Harry.
He was to be paid nothing for making or attempting to make
a sale.  It is clearly an agency which was revocable, and it
is not denied that the plaintiff did revoke that agency in 1922.
Meechem on Agency, sec. 561.  On the assignment of error
that the commissioner or some other agency of the court should
have found that the property was not susceptible of partition
and that it would be to the best interests of all concerned,
that a sale should be made thereof, it is enough to say that
the bill so charges and there is no denial of these facts in
the answers.  The answers tacitly admit the allegation of the
bill in that regard.  It was not necessary for the court to
appoint commissioners to ascertain, or to require evidence to
prove, an admitted fact.  Sec. 36, chap. 125, Code.

Error is assigned because the Remele debt is reported as a
first lien and directed to be paid out of the proceeds of the
sale of the property.  It is asserted that the debt is a stale
one, as appears from the report.  The debt secured was con-
tracted in 1899, due at one year from date, with the privilege
of renewal for two years at the end of the first year, with
interest payable each month at 8%.  The commissioner re-
ported that the parties offered no evidence, he took none, and

no creditor or lien holder came in to prove any claim. On what did he base his finding? The statute, sec. 7, chap. 129, Code, requires a commissioner in chancery to return with his report all the evidence taken before him. He must have evidence on which to base any fact. Neither the bill nor answers fix the amount of that debt. While the decree says that exceptions were made to the report and overruled, the record is silent as to the nature of those exceptions. Can this defect in the report be raised in this court? We think so, under the authority of *Haymond* v. *Murphy,* 65 W. Va. 616, 621, and authorities there cited. The defect is apparent on the face of the report. The decree is erroneous in finding this alleged claim as a first lien, or any lien. No plea of usury was interposed. The statute of limitations was not properly pleaded. In the replication of plaintiff to the answers it is stated that the statute of limitations is pleaded as to all debts which were barred. Evidently this plea of the statute was directed to the debts and accounts which defendants claimed for moneys expended for the benefit of plaintiff. It was pleaded in a controversy between plaintiffs and defendants as to their debts. Moreover, the plaintiff who pleaded the statute of limitations in this way is the appellee herein, insisting upon the correctness of the decree. The statute of limitations is a personal plea, and if the defendants, the appellants here, wished to interpose that defense to Mrs. Remele's debt, they should have pleaded it. As before observed, it is apparent that in the partition suit, as an incident thereto, the lien debts of the decedent have been brought before the court for adjudication, and the decree adjudicates that incidental matter. The decree directed that the entire property be sold, and these lien debts paid. In this respect the proceeding partakes of the nature of a creditors' suit. It will be observed that the trustee, Wyatt, in the Remele deed of trust, is dead, and the legal title to the property is outstanding. The personal representative of the trustee is not a party to the suit. In order to give the purchaser title to the property free from incumbrances, the legal title to the property should be before the court, in order that it might be transferred to the purchaser. It is elementary that the legal title to land involved in suits

to sell the land should be before the court before any disposition is made of it. The general rule is that where a chancery suit is instituted to sell or in any way affect property conveyed to a trustee, the trustee must be a formal party. *Norris* v. *Bean,* 17 W. Va. 675; Story Eq. Pl. secs. 207, 209. We think, under these circumstances, it was error for the court to attempt to sell the property free from incumbrances in the partition suit without having before it the legal title.

Appellants insist that there is error in the decree because the respective interests of the owners therein were not ascertained. The law of descents would fix the interest of the heirs. They are entitled to one-third each of the proceeds of the property subject to the widow's dower. But the dower interest has not been ascertained, and has not been assigned. The decree simply finds that Lucinda Baumgardner, wife of James Baumgardner, deceased, has a dower interest. The house and lot is not sold free of dower, and the widow has not consented to accept a gross sum in lieu thereof. One of the main purposes of the bill has been left open. Her right of dower seems to have been entirely ignored in the decree, except recognition of its existence. It is error to decree a sale of the whole property and require the widow to take a gross sum in lieu of dower, unless by consent of all the parties. *White* v. *White,* 16 Grat. 264, where it was held that a widow is neither a joint tenant, tenant in common nor coparcener with the heirs within the meaning of the partition statute, so as to authorize the court to sell the whole estate against her will, and compel her to take a gross sum in lieu of her dower; and unless it is impossible to assign dower in kind, a court has no power under its general jurisdiction to decree a sale, and provide for her a gross sum in lieu of dower, against her will. *Wilson* v. *Branch,* 77 Va. 69; *Simmons* v. *Lyles,* 27 Grat. 930; *Hoy* v. *Harner,* 100 Va. 600; *Hull* v. *Hull,* 26 W. Va. 1, 18; *Hoback* v. *Miller,* 44 W. Va. 635; *McKittrick* v. *McKittrick,* 43 W. Va. 117, 124; 2 Minor's Inst. p. 141; Graves' Notes on Real Property, sec. 318, note, p. 525. In this note Professor Graves says:

"But as the widow is not within the purview of the statute of partition, no power of sale of the whole property is derived therefrom; and if dower in kind be not impracticable, the court can not order a sale of the whole property under the statute of partition, Code of 1849, ch. 124, §2, declaring that this may be done 'if the interest of the parties will be promoted by a sale of the entire subject.' But unless the widow consents to such sale, and a monied compensation out of the proceeds, she must have her dower in kind; and the sale, for division among the heirs, must be of the residue of the property subject to her dower thus assigned; *i. e.* two thirds of the estate in fee simple, and the reversion in fee after the life estate of the widow in the other third."

See 2 Scribner on Dower (2d ed.) p. 648, where it is said:

"But where a sale is made by the personal representatives of the husband for the payment of general debts; or where it occurs in proceedings in partition by the heirs at law; in these, and in like cases, it is very questionable whether the widow can be deprived, against her consent, of the enjoyment of her share of the rents which the estate will produce, or of an annual sum charged upon the proceeds of the sale, equivalent thereto. In many cases, as has been observed, the legal interest will exceed the annual profits; but not unfrequently, the buildings or other improvements upon the lands yield large returns; and the question is,—not what will probably be to the pecuniary advantage of the widow in a majority of instances, but what is her legal right."

In some of the states it has been held that the dower interest of a widow in her husband's land does not make her a proper party defendant in a suit brought by the heirs for partition; that her right is paramount and will attach on partition to the shares assigned the heirs in severalty; and the existence of her dower interest will not bar partition. 15 Encyc. & Prac. 797; *Ward* v. *Gardner,* 112 Mass. 42; *Bradshaw* v. *Callaghan,* 5 Johns. (N. Y.) 78. In other states this inconvenience has been cured by statute, as in Illinois and Ohio. See 2 Scribner Dower, 187. However, it has been held in Virginia, and is now the practice in that state as well as this, that without the aid of a statute, upon a bill filed by an

heir for partition of lands in which there is a dower interest, the widow should be made a party to that suit and her dower assigned to her, and partition made of the residue; that it is error to proceed in her absence and make partition of the land subject to her dower right. *Custis* v. *Snead,* 12 Grat. 260. And it was held in *White* v. *White, supra,* that under the general powers of a court of equity the widow might be assigned dower in kind in a partition suit; or, if it was not practical to assign her dower, then it might decree a sale of the whole property and assign her dower in the proceeds, with her consent. Unless there be some adjudication of the widow's right of dower that she shall have it in kind or that she will take a gross sum in lieu thereof, by her consent, or that one-third of the rents, issues and profits shall be set aside and paid to her during her life, it is error to decree a sale of the land in a partition suit under the authorities above cited. Nor can it be done in a creditors' suit for the payment of the intestate's debts. *Laidley* v. *Cline,* 8 W. Va. 218; *Kilbreth* v. *Roots,* 33 W. Va. 600; *Tracy* v. *Shumate,* 22 W. Va. 474. It was suggested in argument that the widow, Lucinda Baumgardner, could be decreed a gross sum in lieu of her dower after the sale, under the method of computation prescribed in chapter 65, Code; and that she has tacitly assented thereto by making no appearance in or defense to the suit. Her silence does not give assent to the taking of a gross sum out of the proceeds in lieu of her dower. If the land be sold under this decree she could demand assignment of her dower in kind, as against the purchaser; upon a proper showing she might be entitled to occupy a portion of the mansion house, where she now resides. Often certain rooms in the dwelling are assigned to the widow; and where the property is incapable of assignment of dower she has been given one-third of the income as in case of a mill where every third toll dish is assigned to her. There is nothing in this case whatever to show that assignment of dower in kind is impracticable, and if a sale be made under this decree that question involving litigation may arise between the widow and the purchaser of the property. The uncertainty of the status of the dower interest would be reflected in the purchase price which

a prudent investor would offer for the entire property. It is to the best interest of appellants as well as appellee to see that the property brings its real worth in the market and to that end to see that all incumbrances thereon have been ascertained and adjudicated and that the purchaser will get a clear title and peaceable possession. In *Jarrell* v. *French*, 43 W. Va. 456, a sale of lands under decree of the court had been made without providing in any way for the widow's dower. Upon appeal the court held that she was entitled to dower in the land and that the purchaser was responsible therefor although he had paid the full purchase price into court. In *Carver* v. *Ward*, 81 W. Va. 644, the wife appeared in a bankruptcy proceeding against her husband, he being then in life, and agreed to a sale of the property free from her dower and that she would accept out of the proceeds a gross sum in lieu of her inchoate right of dower. The property was sold and afterwards her husband died, and she instituted against the purchaser of the property a suit for dower therein, and it was held that she was entitled to dower although she had agreed in the bankruptcy proceeding that the property should be sold free from dower with a condition that her inchoate right should be compensated by a gross sum out of the proceeds. It was held that the purchaser, knowing that such condition existed at the time of the sale and purchase, was bound to look to the application of the purchase money and see that her dower was paid. Not having done so, her lien for dower was not relinquished.

It was also argued that unless a sale of the interest of the heirs could be made in the partition suit where the property is not susceptible of partition and it is to the best interests of all concerned that the property should be sold, unless the widow who had a dower interest therein should consent, the result would be that the heirs could not obtain their inheritance until after her death, thus depriving them of the benefit of their inheritance during her life. That does not necessarily follow; because dower may be assigned in kind before the decree of sale be entered, and a sale made in fee of the remainder after assignment of dower; and the reversion in fee, after the life estate of the widow in the other

third has ended. She may consent to a sale free of dower, and accept a gross sum. But, by refusing to take a gross sum in lieu of dower, to be computed upon the amount brought at the sale, she would not necessarily keep the heirs out of their inheritance. She has not refused, nor has she consented. If the decree in this case be consummated she may not be entitled to a gross sum in lieu of her dower computed on the sale price; for her dower interest is not sold. She would have no interest in the proceeds of that sale. The purchaser would only buy the interest of the heirs and they would be entitled to all of the net proceeds of the purchase price. We so interpret the decree; although the decree purports to sell the land in fee, and orders the purchase money held for proper distribution. The court evidently intended to extinguish dower by payment from the purchase money. What claim thereon would the widow have to a part of the sale price? To whom would she look for her dower? As above suggested, it is not shown in this case that assignment of dower in kind is impracticable, and if that should turn out to be the case, the purchaser would be required in a proper proceeding to assign her dower in kind. Under such conditions would not the purchase price be affected? Would not a purchaser bid much less under such uncertain conditions? It seems to us that it would be eminently proper that these questions concerning the dower should be determined before sale. A dower incumbrance unascertained is as serious as lien debts; and it is very well settled that the liens in their dignity and priority should be determined before a sale of real estate is made. In a partition suit by the heirs, partition in kind among them can not be had until dower in kind has been assigned to the widow. *Custis* v. *Snead,* 12 Grat. 260. And in a suit by a creditor to enforce an incumbrance on the land which is subordinate to the dower it is error to decree a sale without first assigning dower in kind, unless the widow has consented to accept a gross sum in lieu, and then the land may be sold free of dower interest. 2 Scribner Dower 653; *Laidley* v. *Cline,* 8 W. Va. 218; *Kilbreth* v. *Roots,* 33 W. Va. 600; *Jarrell* v. *French,* 43 W. Va. 456. If partition in kind can not be made without assignment of the dower

interest, it seems that the same principle would apply and prevent a sale where partition was impracticable and could not be conveniently made, until the widow's dower was assigned or she had consented that her dower be sold, taking a gross sum out of the proceeds in lieu. It will be observed that the decree does not ascertain the age of the widow, although it is alleged in the bill that she is eighty-six years of age. There may be some controversy hereafter over her correct age. *Anderson* v. *Stockdale,* 93 W. Va. 657, 117 S. E. 553.

For the reasons above stated, we think the interests of all the parties in the house and lot should be definitely ascertained before sale; and while the interests of the heirs are sufficiently ascertained in the decree, the interest of the widow is not. While she is not complaining and has made no appearance whatever in the suit either in the court below or in this court, we think appellants would have the right to rely upon this error in order that the property may be sold as a whole with the widow's consent to take a gross sum; or sold subject to her dower in kind; all in order that the property should bring its full price in the market. It may be that the dower interest will be inconsiderable as estimated from the age of the widow. While her expectancy of life is short, she may live for many years to come, and the principle herein announced can not be affected by the amount involved. We think it was error to decree a sale without adjudicating the interest of the widow therein.

*Reversed and remanded.*